Thomas G. **REISING**, Appellant–
Cross Petitioner,

v.

The **GUARDIANSHIP OF** Christopher
Joel **REISING**, Mary S. Nall, Kellie
Browning, Andy Reising, Appellees–
Petitioners.

No. 82A01–0505–CV–229.

Court of Appeals of Indiana.

Aug. 18, 2006.

Michael C. Keating, Keating, Bumb, Vowels & LaPlante, PC, Evansville, IN, Attorney for Appellant.

Steven K. Deig, Law Office of Steven K. Deig, Evansville, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Thomas Reising ("Tom") appeals the trial court's grant of summary judgment awarding guardianship of his adult son Christopher Reising ("Christopher") to Mary Nall, Kellie Browning, and Andy Reising (collectively, "Mary"). We find that the trial court erred by issuing summary judgment, without a guardianship hearing, after two related hearings: first, the hearing on an Adult Protective Services ("APS") petition to declare Christopher an endangered adult in need of protective services because of abuse he endured in Tom's home and second, the hearing on an APS motion to prohibit contact between Tom and Christopher. The properly designated evidence in Mary's motion for summary judgment contains genuine issues of material fact regarding who should be Christopher's guardian. Thus, because we are unable to determine which parent, if either, should be Christopher's guardian, we reverse and remand.

## Facts and Procedural History

Since 1998, Christopher has lived with his father Tom and his stepmother, Marisa Reising. Christopher is an adult living with several mental and physical disabilities, including cerebral palsy and moderate mental retardation. Tom employs caregiving services to help meet Christopher's needs.

Mary Nall is Christopher's mother and Tom's ex-wife. Tom and Mary have two other children beside Christopher, Kellie Browning and Andy Reising. In July 2004, Mary petitioned the court to hold a hearing to declare Christopher an incapacitated person, find that a guardian is necessary for Christopher, and find that Mary should be guardian over Christopher's person and estate.

The next month, APS filed a petition for protective services for Christopher, requesting the court to hold a hearing and find that Christopher is required to be removed from Tom's home and placed in independent living. APS based this petition on reports gathered from Christopher's previous caregivers about a consistent pattern of verbal and psychological abuse. Tom then filed a cross-petition for the court to appoint him as Christopher's permanent guardian.

On August 19, the court held a hearing on the APS petition to require Christopher to receive protective services. Several former caregivers testified that they had witnessed mostly Marisa, but also Tom, abusing Christopher physically and psychologically, and Tom disputed that testimony. Also in the hearing, Tom sought to introduce Christopher's testimony about where he would like to live, and the court refused the request. The court asked the parties if there would be a time later for the parties to present evidence on the guardianship issue, and Mary's attorney answered affirmatively. The court then explicitly stated that "I'm reiterating for the record we are all here today on [the] Adult Protective Services petition" and that Christopher's statement could be introduced later. Aug. 19, 2004, Hr. Tr. p. 91. The court also issued an injunction prohibiting Marisa from having any contact with Christopher.

That same day, the trial court issued a Protective Services Order, which was amended a short time later.[1] In the order, the court found the following: Christopher is an endangered adult; the Protective Services Order's objectives are Christopher's safety and well-being; Christopher is to be placed in independent living with twenty-four-hour care because of his inability by reason of mental retardation to care for himself and because he is harmed or threatened with harm as a result of abuse in his current situation; and that Christopher lacks the ability to make an informed decision concerning his need for protective services. As a result of these findings, the court ordered the following: that the objectives of the order are to place Christopher into an alternate living situation; that under the least restrictive protective services necessary to obtain the objectives, Christopher should be set up in twenty-four-hour care; that care providers remain with Christopher at all times, even at family outings; that Christopher must receive these services until a proper permanent guardian is put in place for him; that the Petitioner's "Plan for Provision of Services" is approved; and that no one should make negative remarks about any of the parties involved in the case within

---

1. We note that only the Amended Protective Services Order from September 8, 2004, is included in the record.

Christopher's presence. Last, the trial court ordered that APS was required to petition the court to modify or terminate this order if a proper guardian was put in place for Christopher, the physical and mental health of Christopher is no longer in danger, and the termination of the order will not likely place Christopher in danger.

In October, APS filed a petition to prohibit contact between Tom and Christopher. APS had received reports that Tom continued to make disparaging remarks about Mary, that Tom, disregarding the court's injunction, had facilitated contact between Christopher and Marisa, and that Tom had been instructing Christopher to tell the judge he wanted to live with Tom and Marisa. Mary joined that petition to prohibit contact and requested an emergency hearing.

On November 4, the court held a hearing on the motion to prohibit contact. That same day, the court entered an Order on the Motion to Prohibit Contact filed by APS and Mary. The court ordered that Tom and Marisa Reising would have no contact with Christopher in any way and could not visit Christopher's apartment complex, place of employment, or places of entertainment. The order's final paragraph mandates that "this Order shall remain in full force and effect until this guardianship matter is fully resolved or by further Order of this Court." Appellant's App. p. 28.

After the August 19 order on the APS petition and the November 4 order to prohibit contact were filed, Mary moved for summary judgment on the guardianship issue, requesting the court to review the deposition of Christopher and to take judicial notice of all the evidence at the August 19 and November 4 hearings and the court's orders from both hearings, and asking the court to grant her guardianship of Christopher. Tom did not designate

evidence to oppose the motion for summary judgment or respond in any other way. The court heard argument on the motion and granted summary judgment and guardianship of Christopher to Mary. APS then filed a motion to terminate the APS Order, and the court granted the motion.

Next, Tom filed a motion to correct errors, Mary filed a statement in opposition to Tom's motion to correct errors, and the court heard argument on the motion. The court denied the motion to correct errors. Christopher's guardian ad litem then requested that Tom be allowed visitation time with his son, and the court granted that request. Tom now appeals the summary judgment.

## Discussion and Decision

Tom contends the lower court erred in granting summary judgment because Mary failed to sufficiently designate the matters relied upon in support of her motion for summary judgment and because the evidence before the trial court shows genuine issues of material fact.

When reviewing a ruling on a motion for summary judgment, this Court applies the same standard as the trial court. *Sees v. Bank One, Indiana, N.A.*, 839 N.E.2d 154, 160 (Ind.2005). A party seeking summary judgment must show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.;* Indiana Trial Rule 56(C).

The court construes all evidence in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *City of N. Vernon v. Jennings Northwest Reg'l Utils.*, 829 N.E.2d 1, 3 (Ind.2005), *reh'g denied*. A trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant bears the bur-

den of demonstrating that the grant of summary judgment was erroneous. *Spears v. Brennan,* 745 N.E.2d 862, 869 (Ind.Ct.App.2001), *reh'g denied.*

The moving party bears the burden of specifically designating materials that make a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law; only then does the burden shift to the nonmovant to set forth designated evidence showing the existence of a genuine issue for trial. *Cansler v. Mills,* 765 N.E.2d 698, 701 (Ind.Ct.App. 2002), *trans. denied.* The review of a summary judgment motion is limited to the materials properly and specifically designated to the trial court. Ind. Trial Rule 56(H); *see also Johnston v. State Farm Mut. Auto. Ins. Co.,* 667 N.E.2d 802, 805–806 (Ind.Ct.App.1996) (recognizing that "a court may not rely on supporting materials other than those in the form intended by T.R. 56"), *trans. denied.*

■ In her Motion for Summary Judgment, Mary requested that the court first, review the videotape deposition of Christopher and take judicial notice of the entire transcripts of both the August 19 hearing on APS' motion to remove Christopher from Tom's house and the November 4 hearing on the motion to terminate contact between Tom and Christopher, and second, take judicial notice of the Court's orders from these two hearings. Under Indiana Trial Rule 56(C), a party can designate matters of judicial notice.

The testimony from the two hearings and Christopher's deposition was improperly designated because of the specificity requirement under Trial Rule 56. In particular, Mary did not delineate which portions of the hearings the trial court should consider in deciding her motion for summary judgment. *See Whinery v. Roberson,* 819 N.E.2d 465, 471 (Ind.Ct.App.2004) (discussing how a party can meet the specificity requirement by providing specific page numbers and citations but cannot meet the specificity requirement by designating pleadings and affidavits in their entirety), *trans. dismissed; see also Long v. Durnil,* 697 N.E.2d 100, 104 (Ind.Ct.App. 1998) (noting that "a party does not comply with T.R. 56(C) merely by designating entire portions of the record"), *trans. denied.* We note that, even if we were to consider the entire transcripts of both hearings, the transcripts are filled with disputed testimony over the abuse allegations against Tom and Marisa, and thus, reveal the existence of a genuine issue of material fact making summary judgment inappropriate.

■ The court orders from August 19 and November 4, however, meet the specificity requirement. Each ruling is an order two pages in length; accordingly, they can be considered without specific page and paragraph citations. *See Kronmiller v. Wangberg,* 665 N.E.2d 624, 628 (Ind.Ct. App.1996) ("While setting forth the entire exhibit is not a problem in a short one or two-page affidavit . . . it is not appropriate to designate lengthier exhibits without specific reference[s]"), *trans. denied.* Further, the court may take judicial notice of its own orders in the same case. *See Richard v. Richard,* 812 N.E.2d 222, 225 (Ind.Ct.App.2004). Having determined that the orders could properly be considered, we must now determine whether the orders show no genuine issue of material fact and whether Mary is entitled to guardianship as a matter of law.

In the trial court's Amended Protective Services Order on August 19, 2004, the court found Christopher to be an endangered adult in need of protective services until a proper guardian is appointed for Christopher and Christopher is no longer in physical or mental danger. Christo-

pher's placement in independent living was necessary because Christopher was harmed or threatened with harm as a result of abuse in his current situation in Tom's home. However, the court did not rule on the suitability of Mary as a guardian. Also, the order requires APS to petition the court to modify or terminate this order when a proper guardian is put in place and Christopher is no longer in danger. This temporary order does not conclusively show that there is no genuine issue of material fact as to who may serve as an appropriate guardian for Christopher.

The second order designated by Mary in her motion for summary judgment reveals that on November 4, 2004, the court prohibited contact between Tom and Christopher. Of course, it is axiomatic that a person who is permanently prohibited contact with an adult could not serve as that adult's guardian. However, the November 4 Order, by its own terms was temporary and remained "in full force and effect until this guardianship matter has been fully resolved or by further Order of this Court." Appellant's App. p. 28. Nothing in this order demonstrates that Tom could not be considered as a proper permanent guardian when the guardianship issue was resolved or that Mary was the suitable choice for guardian. Thus, this order does not establish that there is no genuine issue of material fact as to the appropriate guardian for Christopher.

■ Nevertheless, Mary argues that summary judgment was proper because the orders in these hearings "constitute res judicata concerning issues addressed in the summary judgment." Appellees' Br. p. 1. She is incorrect: collateral estoppel, also known as "issue preclusion," is not applicable in this case. Collateral estoppel requires the following: 1) a final judgment on the merits in a court of competent jurisdiction; 2) identity of issues; and 3) the party to be estopped was a party or the privy of a party in the prior action. *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* The court must then consider whether the use of collateral estoppel is appropriate: whether the party against whom the judgment is pled has had a full and fair opportunity to litigate the issue and whether, under the circumstances, it would be otherwise unfair to permit the use of collateral estoppel. *Id.*

■ In this case, our estoppel analysis ends with the first requirement because neither of the designated orders in the cause was a final judgment on the merits. Final judgments dispose of the subject matter of the litigation as to the parties so far as the court in which the action is pending has the power to dispose of it. *See Adams v. Marion County Office of Family & Children*, 659 N.E.2d 202, 205 (Ind.Ct.App.1995). Both orders in this case were, by their own terms, to end when the guardianship issue was ultimately decided. The August 19 Amended Protective Services Order required APS to petition the Court to modify or terminate the order if a proper guardian was put in place and Christopher was no longer in danger. The November 4 Order remained in force until the guardianship matter was fully resolved or by further Order of this Court. Additionally, in the August 19 hearing, the court recognized that the guardianship issue would be heard later, showing that the action was not disposed.

Neither order conclusively settled the entire guardianship issue permanently. Thus, the orders were not final judgments on the merits that adjudicated all the claims in this action and cannot be given preclusive effect. *See* Ind. Trial Rule 54(B) (providing that an order which adjudicates fewer than all the claims in an

action is subject to revision at any time before the entry of judgment adjudicating all the claims and is not final); *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 478 (Ind.Ct.App.2000) (finding that because the court's decision was not final and subject to change, the decision should not be given preclusive effect), *trans. denied.* Because res judicata is inapplicable here, the trial court erred in granting summary judgment.[2]

Reversed and remanded.

DARDEN, J., and RILEY, J., concur.

---

2. The record does not indicate Christopher's current living situation. We are aware that he was living in an independent, supportive environment before the trial court granted Mary guardianship in the summary judgment decision, but we do not know if Mary saw fit to place him elsewhere after that time. Regardless, pending the final resolution of the guardianship issues before the trial court and provided that nothing is brought before that court indicating that Christopher's present living situation is for some reason no longer suitable for him, Christopher should remain in his current placement.