TACCO FALCON POINT, INC., Successor in Interest by Assignment to Inland Mortgage Company, Appellant–Plaintiff,

v.

ATLANTIC LIMITED PARTNERSHIP XII, Atlantic XIII, LLC, David M. Clapper, Art Country Squire, LLC, and American Realty Trust, Inc.,[1] Appellees–Defendants.

No. 49A04–1003–CP–202.

Court of Appeals of Indiana.

Nov. 22, 2010.

1. We note that although ART Country Squire, LLC and American Realty Trust, Inc. were

defendants in the trial court, they have not filed an appellate brief with this court. However, a party of record in the trial court shall be a party on appeal. Ind. Appellate Rule 17(A). Therefore, we include them as parties on appeal.

Dawn R. Rosemond, Lisa D. Updike, Barnes & Thornburg, Fort Wayne, IN, Attorneys for Appellant.

David J. Cutshaw, Kelley J. Johnson, Cohen & Malad, LLP, Indianapolis, IN, Andrew W. Mychalowych, Meghan W. Cassidy, Siciliano Mychalowych Van Dusen and Feul, PLC, Farmington Hills, MI, Attorneys for Appellees.

## OPINION

KIRSCH, Judge.

TacCo Falcon Point, Inc. ("TacCo"), as Successor in Interest by Assignment to Inland Mortgage Company ("Inland"), appeals the trial court's "Order Granting the Motion to Deem Judgment Satisfied" filed by Atlantic Limited Partnership XII, Atlantic XIII, LLC, and David M. Clapper (collectively, "the Clapper Parties"). TacCo raises the following restated issues:

I. Whether the trial court erred when it granted the Clapper Parties' motion because the issues involved had previously been decided by other courts and were therefore barred by the doctrine of res judicata; and

II. Whether the trial court abused its discretion when it found that the judgment at issue had been satisfied because, when TacCo purchased the judgment, it was acting as a strawman for American Realty Trust, Inc. ("ART").

We affirm.

## FACTS AND PROCEDURAL HISTORY

This case arises out of a mortgage foreclosure action initiated in 1999 in Indiana by Inland against the Clapper Parties, ART Country Squire, LLC ("Country Squire"), and ART. Atlantic Limited Partnership XII, Atlantic XIII, and Country Squire were all obligors on the note secured by the mortgage. David M. Clapper and ART guaranteed the note. On February 19, 2002, instead of proceeding with the foreclosure litigation, the parties entered into the Consent Judgment. The Consent Judgment granted Inland a judgment against the Clapper Parties, Country Squire, and ART, jointly and severally, in the amount of $3.2 million. According to the terms of the Consent Judgment, the real property, which was located in Indianapolis, Indiana, was to be sold at a sheriff's sale.

Prior to the entry of the Consent Judgment, Inland sent a letter to ART's attorney, Robert Arnett ("Arnett"), responding to an offer by ART "to purchase [Inland's] loan documents." *Appellant's App.* at 307. Inland proposed a counter-offer, and on January 29, 2002, Arnett made a counter-offer on behalf of ART and set out terms for which ART would settle with Inland. This counter-offer provided that a new company, to be designated by ART, would purchase the Consent Judgment and that ART would unconditionally guaranty payment of the note. *Id.* at 322–24. On February 19, 2002, Inland entered into a Settlement Agreement ("the Agreement") with Country Squire, ART, and American Realty Investors, Inc. ("ARI"), who was ART's parent company (collectively, "the ART Parties"). The terms of the Agreement stated that, within two weeks, the ART Parties were to locate a prospective purchaser of the Consent Judgment and that, in exchange for: (1) cash in the amount of $1.5 million; (2) the purchaser's executed promissory note in the amount of $ 1.5 million; (3) a guarantee of the note by ARI; and (4) a letter of credit in favor of Inland in the amount of $250,000, Inland would assign its interests in the Consent Judgment to the purchaser. The Agreement also specified that ART was to receive credit against the amount owed under the Consent Judgment because if Inland were ever to seek enforcement of

the judgment against ART, Inland would be limited to the amount owed under the note. *Id.* at 94. On March 1, 2002, Arnett requested that the two-week deadline in the Settlement Agreement be extended, and Inland notified Arnett that, if ART wired $100,000 to Inland that day, the deadline would be extended and ART would be credited this amount against the judgment. On the same date, ART wired $100,000 to Inland, and the deadline was extended for two weeks. Also, on the same date, TacCo was created.

On March 8, 2002, Arnett notified Inland's counsel that a "new entity has been formed to function as the purchaser/borrower/mortgagor" and identified TacCo as this entity. *Id.* at 330. On March 13, 2002, ART wired $1.4 million to Inland; it also wired $250,000 from its account. On the same date, TacCo opened a Certificate of Deposit with Southwest Bank for $250,000. TacCo also entered into a loan agreement with Southwest Bank for $250,000, and the stated purpose of the loan was stated as "Letter of Credit … for the Benefit of Inland Mortgage Company." *Appellees' App.* at 246. The loan was secured by the Certificate of Deposit opened on the same date, and the charge for the letter of credit was $5,000. Also, on March 13, 2002, ART wired $5,000 to TacCo Financial Inc., which was TacCo's parent company. On the same date, Tac-Co and Inland entered into an agreement, which referenced the Agreement with ART, but did not reference the specific terms of price.

On March 18, 2002, Inland gave notice to the Clapper Parties and the other judgment debtors that an "Assignment of Judgment" had been executed in favor of TacCo. *Appellant's App.* at 146–48. The Clapper Parties filed a "Motion for Entry of Satisfaction of Judgment," which sought a determination that the Consent Judg-ment had been satisfied because ART, a co-judgment debtor, used TacCo to purchase the judgment. *Id.* at 155–60. This motion was set for hearing, but before the hearing occurred, TacCo filed for Chapter 11 bankruptcy in a Texas court. Thereafter, a sheriff's sale on the real property involved in the Consent Judgment was conducted, and TacCo submitted a credit bid of $1 million.

While TacCo's bankruptcy case was still pending in Texas, TacCo filed an action in Michigan Circuit Court to domesticate and enforce the Indiana judgment. In response, the Clapper Parties filed affirmative defenses, including that the judgment was satisfied based upon the fact that ART had used TacCo as its strawman in the purchase of the judgment. Clapper also filed a third-party complaint against the ART Parties seeking contribution on the judgment. TacCo argued that it was not ART's strawman and that it had purchased the judgment from Inland using its own funds. TacCo never took any action to enforce the judgment against ART.

During the same period of time, TacCo and ART sought to have the federal bankruptcy court in Texas decide whether the judgment had been satisfied. At a hearing on the Clapper Parties' request for a preliminary injunction allowing them to conduct further discovery, TacCo's president, Wayne Starr, testified that TacCo obtained the money to purchase the Consent Judgment from its parent company, TacCo Financial, through a line of credit from a company called One Realco. *Id.* at 182–83. Eric Redwine, TacCo's corporate representative and its Texas attorney, testified that TacCo borrowed the money for the purchase of the judgment from TacCo Financial, which borrowed the money from One Realco. *Id.* at 192. No accounting records documenting these transactions were produced to the court.

Arnett testified as ART's corporate representative and argued that it was the intent of ART and Inland that governed. He stated that the court should look to Inland's intent and whether Inland intended that the payment would extinguish the judgment as to ART. *Id.* at 196. When these statements were made, the Clapper Parties had not yet received a copy of the Agreement or the financial records from ART and its bank. At the conclusion of the hearing, the bankruptcy court denied the Clapper Parties' motion for preliminary injunction. TacCo attempted to enforce the Consent Judgment against the Clapper Parties through the bankruptcy proceedings. The bankruptcy court ruled that it was not the proper forum to enforce the judgment and dismissed TacCo's adversary proceedings against the Clapper Parties. In its opinion dismissing the proceedings, the bankruptcy court stated, "the ultimate resolution of the underlying dispute regarding the propriety of the foreclosure and allegations of a strawman transaction requires the application of Indiana law, an expertise for which the Indiana courts are peculiarly suited." *Id.* at 273–74.

In the Michigan Circuit Court, David M. Clapper posted a cash bond of $2.5 million to stay the execution of TacCo's collection action. As part of the Michigan proceedings, the Clapper Parties sought discovery from TacCo, ART, and Inland and its attorneys. Through this discovery request, the Clapper Parties received documents and financial records, which showed that it was ART that initiated the negotiation with Inland to purchase the loan documents, that ART was responsible for negotiating the entire deal with Inland, and

that the transaction between TacCo and Inland was intended to extinguish the judgment as to ART. The Clapper Parties also obtained financial records from Wachovia Bank, which was formerly Southwest Bank, that showed Inland was paid directly from ART.[2] On May 8, 2006, TacCo filed a "Motion for Summary Disposition" with the Michigan court and argued that the defenses raised by the Clapper Parties, while available in Indiana, where the judgment originated, were not available in Michigan. *Id.* at 785–88. The Michigan Circuit Court granted TacCo's motion and found that, while the strawman defense could be raised in Indiana, the Full Faith and Credit Act did not require Michigan to recognize the Indiana defenses in a domestication and enforcement proceeding where the strawman defense was not available in Michigan. *Id.* at 883–84. The Clapper Parties appealed, and the Michigan Court of Appeals ruled that Clapper was not permitted to raise the strawman defense in an enforcement proceeding in Michigan. *TacCo Falcon Point, Inc. v. Clapper,* Nos. 271525, 271552, 2007 WL 287173, at *3 (Mich.Ct.App. Feb. 1, 2007). On June 4, 2008, the Michigan Supreme Court denied further appeal to the higher court because it was not "persuaded that the questions presented should be reviewed" by the Court. *Tacco Falcon Point, Inc. v. Clapper,* 481 Mich. 886, 749 N.W.2d 254 (2008).

After the appeals had been exhausted in Michigan, the Clapper Parties requested that the cash bond be transferred to Indiana so that the Indiana court could decide the strawman issue. The Michigan Circuit Court granted this request and stated in its order that, a determination of

---

**2.** Although the documents reflect that the funds at issue were wired from the account of ARI, ARI's operating account is the same as that of ART. ARI merged with ART in 2000, with the result of ART becoming a wholly-owned subsidiary. *Appellant's App.* at 1088, 1099–1122.

the merits of the strawman issue remained to be made and that it needed to be determined in Indiana. *Id.* at 295. The cash bond was transferred to Indiana, and the parties filed their respective briefs regarding the Motion for Satisfaction in Marion Superior Court. A hearing was held on the motion, and on March 1, 2010, the trial court issued its order granting the Clapper Parties' motion and deeming the judgment fully satisfied. TacCo now appeals. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

### Standard of Review

Indiana Trial Rule 60(B) provides that "a trial court may relieve a party from an entry of adverse judgment upon specified procedural, equitable grounds justifying relief from the legal finality of judgment." *Merkor Mgmt. v. McCuan,* 728 N.E.2d 209, 211 (Ind.Ct.App.2000). Specifically, subsection (B)(7) states that a trial court may relieve a party from judgment if "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." Ind. Trial Rule 60(B)(7). To prevail under this subsection, a party must affirmatively demonstrate that relief was necessary and just. *Merkor Mgmt.,* 728 N.E.2d at 211.

Our review of a trial court's decision on a motion for relief from judgment under Trial Rule 60(B) is limited to determining whether the trial court abused its discretion. *Id.* An abuse of discretion occurs where the trial court's ruling is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Zaremba v. Nevarez,* 898 N.E.2d 459, 463 (Ind.Ct.App.2008). On review, we will not reweigh the evidence, and we give the trial court's order substantial deference. *Hartig v. Stratman,* 760 N.E.2d 668, 671 (Ind. Ct.App.2002), *trans. denied.*

### I. Res Judicata

TacCo argues that the trial court abused its discretion when it granted the Clapper Parties' motion for satisfaction of judgment because the motion was procedurally barred by the doctrine of res judicata. TacCo contends that the strawman issue presented in the Clapper Parties' motion had already previously been determined, and therefore, res judicata prevented the trial court from determining the issue. TacCo claims that the strawman issue was presented to both the Texas bankruptcy court and the Michigan Circuit Court and that both courts rendered a decision on the merits of the issue. Therefore, TacCo argues that the Clapper Parties were barred from raising the issue to the trial court.

The doctrine of res judicata serves to prevent the litigation of matters that have already been litigated. *Dev. Servs. Alts., Inc. v. Ind. Family & Soc. Servs. Admin.,* 915 N.E.2d 169, 179 (Ind. Ct.App.2009), *trans. denied* (2010). Res judicata consists of two distinct components: claim preclusion and issue preclusion. *Perry v. Gulf Stream Coach, Inc.,* 871 N.E.2d 1038, 1048 (Ind.Ct.App.2007). Claim preclusion is applicable when a final judgment on the merits has been rendered and acts to bar a subsequent action on the same claim between the same parties. *Id.* When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. *Id.* Claim preclusion applies when the following four factors are present: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merits; (3) the matter

now at issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between parties to the present suit or their privies. *Id.* "Final judgments dispose of the subject matter of the litigation as to the parties so far as the court in which the action is pending has the power to dispose of it." *Reising v. Guardianship of Reising,* 852 N.E.2d 644, 649 (Ind.Ct. App.2006).

■ TacCo first argues that the Texas bankruptcy court determined the merits of the strawman defense issue when it rejected the Clapper Parties' motion for a preliminary injunction. The Clapper Parties contend that the Texas bankruptcy court never made a decision on the merits of the strawman issue because the court merely held an evidentiary hearing on a motion for preliminary injunction and denied the motion. We agree.

■ Here, the Clapper Parties filed a motion for a preliminary injunction with the Texas bankruptcy court in order to be able to conduct additional discovery on the strawman issue.[3] The bankruptcy court held an evidentiary hearing on this motion and denied the motion based on a failure to meet the burden of proof for the grant of a preliminary injunction. "A preliminary injunction is a remedy that is generally used to preserve the status quo as it existed prior to a controversy pending a full determination on the merits of that controversy." *U.S. Land Servs., Inc. v. U.S. Surveyor, Inc.,* 826 N.E.2d 49, 67 (Ind.Ct.App.2005). Our Supreme Court has stated: "The question for the court

upon the interlocutory application [for preliminary injunction] is not the final merits of the case. When the cause comes to be heard, the final merits maybe very different...." *Tuf–Tread Corp. v. Kilborn,* 202 Ind. 154, 157, 172 N.E. 353, 354 (1930). Therefore, the determination made by the Texas bankruptcy court was merely that, at the time of the evidentiary hearing, insufficient evidence was presented to support the grant of a preliminary injunction. This was not a full determination on the merits of the case or the strawman issue.

■ TacCo next argues that the Clapper Parties' strawman argument was again found to be without merit by the Michigan Circuit, Appellate, and Supreme Courts. The Clapper Parties contend that no Michigan court ever decided the merits of the strawman issue. We again agree with the Clapper Parties' contention.

In the present case, TacCo filed an action in Michigan Circuit Court to domesticate and enforce the Indiana Consent Judgment, and the Clapper Parties filed affirmative defenses, including that the judgment should be deemed satisfied because of the fact that ART had used TacCo as its strawman. TacCo filed a motion for summary disposition and argued that the strawman defense, although available in Indiana, was not available in Michigan and that it could not be relied upon by the Clapper Parties. The Michigan Circuit Court granted TacCo's motion and found that, while the strawman issue could be raised in Indiana, the Full Faith and Credit Act did not require Michigan to recognize the Indiana defense in a domestication

---

**3.** We note that, although TacCo argues that the denial of the Clapper Parties' motion for preliminary injunction by the Texas bankruptcy court constituted a determination on the merits for res judicata purposes, they appear to abandon this argument in their reply brief when they state, "[t]he only point of dispute is whether the prior Michigan decisions constitute decisions 'on the merits.'" *Reply Br.* at 10–11. However, because TacCo did not explicitly abandon their argument regarding the Texas bankruptcy court, we will still address the argument.

and enforcement proceeding and that the strawman defense was not available in Michigan. At no time did the Michigan Circuit Court apply the law of the strawman defense to the facts and circumstances of the present case and make a determination that ART did or did not use TacCo as its strawman in the purchase of the Consent Judgment.

The Clapper Parties then appealed the Circuit Court's ruling, arguing that the strawman defense should apply to the enforcement proceeding. The Michigan Court of Appeals disagreed and reiterated that the strawman defense was not recognized in Michigan and that full faith and credit did not require Michigan to adopt defenses from Indiana. However, the issue of whether the judgment was deemed satisfied because TacCo was merely a strawman for ART was not decided. The Michigan Supreme Court then declined further appeal of this case. When Clapper filed a motion with the Michigan Circuit Court to have the bond transferred to Indiana pending a determination on the merits of the strawman issue, the Circuit Court found that the bond should be transferred to Indiana pending decision on the merits of the strawman defense because the issue could only be resolved in Indiana. *Appellant's App.* at 295.

Based on the above evidence, we conclude that no Michigan court ever made a determination on the merits of the issue of whether the judgment had been deemed satisfied because ART had used TacCo as its strawman in the purchase of the Consent Judgment from Inland. The courts in Michigan merely found that, although the strawman defense was available in Indiana, it was not recognized in Michigan and that Michigan was not required to recognize the defense in an enforcement proceeding. Therefore, as no former judgment was rendered on the merits of the strawman defense by either the Texas bankruptcy court or any court in Michigan, we conclude that the Clapper Parties' motion for satisfaction of judgment was not procedurally barred by the doctrine of res judicata.[4] The trial court did not abuse its discretion in reaching the merits of the motion.

## II. Satisfaction of Judgment

TacCo argues that the trial court abused its discretion when it found that the judgment had been satisfied. TacCo contends that the trial court erred in determining that it was acting merely as a strawman for ART in the purchase of the Consent Judgment from Inland. TacCo claims that it had no relation to ART, that TacCo was created by TacCo Financial for the purpose of purchasing the Consent Judgment, and that TacCo, not ART, paid for the judgment by borrowing money from TacCo Financial which borrowed money from One Realco.

 Payment of a judgment by one of the judgment debtors or one primarily liable under the judgment is a satisfaction

---

4. TacCo discusses the case of *Essary v. Chicago & North Western Transportation Co.*, 618 F.2d 13 (7th Cir.1980) as persuasive authority to support its position. We do not find *Essary* to be persuasive in our analysis as that case dealt with whether a decision by the National Railroad Adjustment Board that a claim must be dismissed for want of exhaustion of remedies was sufficiently a decision on the merits of the claim so that res judicata applies to bar a subsequent common law action on the mer-

its of the claim under *Union Pacific Railroad Co. v. Price*, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959). Therefore, the case determined whether a case dismissed for failure to exhaust administrative remedies under *Price* barred a later common law action and not whether, as in the present case, a denial of a preliminary injunction and a refusal to apply a defense because it was not recognized in the State rendering the ruling constituted res judicata.

of the judgment, notwithstanding the fact that an assignment is made to him or to someone else. *Zimmerman v. Gaumer,* 152 Ind. 552, 53 N.E. 829, 832 (1899); *Montgomery v. Vicory,* 110 Ind. 211, 11 N.E. 38, 39 (1887); *Klippel v. Shields,* 90 Ind. 81, 1883 WL 5594 at *1 (1883). *See also Lillie v. Dennert,* 232 F. 104, 109 (6th Cir.1916). Where a strawman is used by a co-obligor to purchase an assignment of a judgment, the judgment is deemed to have been purchased by one of the joint judgment debtors. *Klippel,* 1883 WL 5594, at *1; *Lillie,* 232 F. at 109; *Tompkins v. The Fifth Nat'l Bank of Chicago,* 53 Ill. 57, 1869 WL 5493, at *2 (1869). "The controlling fact in such a case ... is the payment by one legally bound to pay, and the fact that an assignment is made to him or to someone else is not of controlling importance." *Klippel,* 1883 WL 5594, at * 2. "If one whose duty it is to pay the debt makes the payment, then an assignment will not keep the debt alive." *Id.*

■ Here, the evidence presented to the trial court showed that ART and Inland entered into the Agreement on February 19, 2002, which provided that, in exchange for consideration of $1.5 million in cash and a note in the amount of $1.5 million, ART would have the right to designate a "purchaser" for the judgment. *Appellant's App.* at 93–95. The Agreement provided for Inland to assign its interest in the Consent Judgment to any entity designated by ART. *Id.* at 93. At the time, the Agreement was signed, no "purchaser" was designated, and TacCo was not incorporated until March 1, 2002. The Agreement stated that Inland would be paid $1.5 million in cash, given a $1.5 million note that would be guaranteed by ARI, and as further security, would be given a letter of credit in the amount of $250,000. *Id.* at 93–94.

All of the agreements that the "purchaser" was to sign were negotiated and drafted by Inland and ART and attached as exhibits to the Agreement. *Id.* at 96–120. The agreement that was to be signed by the "purchaser" did not reference any consideration to be exchanged between TacCo and Inland. *Id.* at 116. Instead, it spoke of the requirement that TacCo market the property and cause it to be sold within six months at either a foreclosure sale or "an arm's length sale to a bona fide third party." *Id.* at 137–38.

The Agreement also provided that, if the judgment was ever reacquired by Inland, Inland would be limited to seeking the amount owed under the note as payment from ART. *Id.* at 94. This is because ART was provided a credit for the $1.5 million paid in cash and any amounts that were paid under the note in the future. Inland's Vice President, who was directly involved in the negotiations with ART, confirmed that the parties had agreed that, because ART had paid the $1.5 million, ART would receive credit for the amounts it had paid in any future collection proceedings if Inland ever reacquired the judgment. *Id.* at 144. Additionally, ART, through its attorney, stated that it entered into the Agreement with Inland because the Agreement netted a benefit of $200,000 by reducing the purchase price of the judgment from $3.2 million to $3 million. *Id.* at 186–87. The fact that ART believed it was receiving a $200,000 benefit by virtue of TacCo purchasing the judgment demonstrates that the Agreement with Inland was meant to extinguish the debt against ART; if this was not the case, ART would not receive any benefit because TacCo would be purchasing a $3.2 million judgment that was fully enforceable against ART (and the Clapper Parties) for $3.2 million.

The evidence also demonstrated that ART initially offered to purchase the loan from Inland for the amount of $1.5 million dollars in late 2001. *Id.* at 307. During the negotiations for the Agreement, ART requested an extension of time, and Inland required ART to give a $100,000 deposit to be credited toward the purchase of the judgment in exchange for the extension; thereafter, ART directly wired the $100,000 to Inland, and was credited this amount against the purchase price.[5] *Id.* at 339; *Appellees' App.* at 254. ART later wired $1.4 million directly to Inland as the remaining balance of the cash payment portion under the Agreement. *Appellees' App.* at 257–58. This payment of $1.4 million to Inland appeared as a transaction on ART's account. *Id.* The note to be executed by TacCo, which was a requirement under the Agreement negotiated by ART, was to be unconditionally guaranteed by ARI and secured by a $250,000 letter of credit. On March 13, 2002, ART wired $250,000 from its account to be used for the letter of credit; ART also wired $5,000 to TacCo to use for the letter of credit fee. *Id.* at 244, 253. The evidence showed that all of the money used to fund the deal with Inland came directly from ART.

The evidence further demonstrated that through the entire process, even after TacCo was identified by ART as the "purchaser" and assignee of the judgment, Inland's attorneys only dealt with ARI's attorneys. ART was the party that originally approached Inland about purchasing the loan documents and made the initial offer. Additionally, all of the documents to be executed by TacCo were also negotiated by Arnett, ART's counsel. Therefore, the evidence showed that TacCo had no involvement whatsoever in negotiating the agreement that it eventually executed with Inland.

We conclude that the evidence presented to the trial court showed that ART made payment to Inland to purchase the Consent Judgment and assigned the judgment to TacCo. "The controlling fact in such a case ... is the payment by one legally bound to pay, and the fact that an assignment is made to him or to someone else is not of controlling importance." *Klippel,* 1883 WL 5594, at * 2. "If one whose duty it is to pay the debt makes the payment, then an assignment will not keep the debt alive." *Id.* Here, ART was a party legally bound to pay the judgment, and the evidence showed that it was the party who made payment to Inland for purchase of the judgment. The fact that an assignment of the judgment was made to TacCo does not change the fact that such payment resulted in a satisfaction of the judgment. The trial court did not abuse its discretion when it found that ART used TacCo as its strawman to purchase the Consent Judgment and deemed that the judgment had been satisfied.

Affirmed.

RILEY, J., and VAIDIK, J., concur.

---

5. Both Inland's Vice President and ART's corporate representative and officer, Louis Corna, confirmed that ART received credit from Inland for these payments toward the balance owed on the judgment. *Appellant's App.* at 144, 1188–90.