CITIMORTGAGE, INC., Appellant–
Intervenor/Cross–Claimant,

v.

Shannon S. BARABAS a/k/a Shannon Sheets Barabas,[1] Cross–Claim Defendant,

ReCasa Financial Group, LLC, Appellee–Plaintiff/Cross–Claim Defendant,

and

Rick A. Sanders, Appellee/Third–Party Defendant.

No. 48A04–1004–CC–232.

Court of Appeals of Indiana.

May 17, 2011.

Matthew S. Love, Feiwell & Hannoy, P.C., Indianapolis, IN, Attorney for Appellant.

Mary A. Slade, Plunkett Cooney, Christopher C. Hagenow, Sarah S. Fanzini,

1. Shannon S. Barabas does not participate in this appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court is a party on appeal.

Hopper Blackwell, P.C., Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Intervener/Cross–Claimant, Citimortgage, Inc. (Citi), appeals the trial court's grant of amended default judgment in favor of Appellee–Plaintiff/Cross–Claim Defendant, ReCasa Financial Group, Inc. LLC (ReCasa), and Appellee/Third–Party Defendant, Rick A. Sanders (Sanders).

We affirm.

### ISSUE

Citi raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion when it declined to set aside ReCasa's amended default judgment.

### FACTS AND PROCEDURAL HISTORY

On August 8, 2005, Shannon Barabas (Barabas) executed a $154,111 mortgage securing property commonly known as 8285 South Firefly Drive (the Property) in Pendleton, Madison County, Indiana. The mortgage states in pertinent part:

> This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501–2026, tel. (888) 679–MERS. **Irwin Mortgage Corporation.**

(Appellant's App. p. 88) (emphasis in original). The mortgage also defines the lend-

er in the mortgage, Irwin Mortgage Corporation (Irwin Mortgage), stating that it "is organized and existing under the laws of [t]he State of Indiana, and has an address of 10500 Kincaid Drive, Fishers, IN 46038." (Appellant's App. p. 88). The mortgage also provides that "Borrower [Barabas] owes Lender the principal sum of [$154,111]." (Appellant's App. p. 88). Additionally, with respect to notice, the mortgage provides that:

> *Any notice to Lender* shall be given by first class mail to *Lender's address* stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

(Appellant's App. p. 93) (emphasis added). The mortgage was recorded on August 19, 2005 in the Madison County Recorder's Office.

On February 26, 2007, Barabas financed with ReCasa two additional mortgages: a first mortgage on property in Marion County and a second mortgage on the Property in Madison County in the amount of $100,000.[2] The mortgage was recorded on May 11, 2007, in the Madison County Recorder's Office. On July 23, 2007, Barabas increased the principal sum of the ReCasa mortgages to $129,600. Nearly a year later, Barabas defaulted on the underlying loan to ReCasa and on June 13, 2008, ReCasa foreclosed on the Property. ReCasa named Irwin Mortgage as a defendant; however, on June 23, 2008, Irwin Mortgage filed a disclaimer of interest, which states:

> COMES NOW the Defendant, Irwin Mortgage Corporation, by counsel, and hereby disclaims any interest in the real

---

**2.** The Marion County property is not subject to this appeal.

estate which is the subject of Plaintiffs Complaint.

WHEREFORE, the Defendant, Irwin Mortgage Corporation, prays that the Plaintiff take whatever relief it is entitled to by virtue of its Complaint and seeks all other relief proper in the premises.

(Appellant's App. p. 51).

On September 9, 2008, the trial court entered a default judgment in the foreclosure lawsuit. Barabas had previously been discharged of her debt in bankruptcy, so an amended default judgment reflecting that fact was entered on September 16, 2008.[3] The judgment ordered the Property to be auctioned at a sheriff's sale, and the Property was sold back to ReCasa for $65,000. The sheriff's deed was issued and recorded on March 4, 2009. Thereafter, on March 20, 2009, ReCasa sold and then deeded the Property to Sanders.

A month after the Property had been sold, in April 2009, MERS assigned the MERS mortgage to Citi. That assignment was recorded on April 20, 2009, in the Madison County Recorder's Office. On October 23, 2009, Citi filed a motion to intervene and for relief from the amended default judgment. Citi's motion argued that as the assignee of MERS, it could assert any and all rights of MERS, and as a result, it was the holder of the first mortgage on the Property. On October 26, 2009, the trial court issued an order authorizing Citi to intervene and held that ReCasa's amended default judgment was vacated and set aside as to "any interest held by [Citi], as the assignee of [MERS], as nominee for Irwin Mortgage Corporation." (Appellant's App. p. 99). On November 19, 2009, Citi filed an amended order for relief from judgment, asking the

trial court to set aside and vacate the sheriff's deed.

On December 8, 2009, Citi filed a cross-claim, counterclaim, and third party complaint seeking to foreclose the MERS mortgage. Citi named ReCasa and Sanders, stating that Sanders took the property 'subject to' the MERS mortgage and that his interest was junior to that of Citi.

On December 23, 2009, Sanders filed a motion to vacate the October 26, 2009 order allowing Citi to intervene and also filed a responsive pleading to ReCasa's complaint. That same day, ReCasa filed a verified objection to Citi's motion for amended order for relief from judgment. A hearing was held on February 16, 2010. Following the hearing, the trial court issued an order vacating its October 26, 2009 order. The trial court's order stated, in relevant part:

6. The [c]ourt finds that [Citi] and the creditors of the [b]ankruptcy [p]roceeding had notice of ReCasa's interest in the Real Estate and this proceeding pursuant to the [b]ankruptcy [p]roceeding and ReCasa's August 4, 2008 Motion for Relief from Stay and Abandon Real Estate.

\* \* \*

8. The [c]ourt further finds that [Citi] also filed a Motion for Relief From Automatic Stay and Abandonment with 30 Day Waiver (Relief Motion) on September 22, 2008, as to a "security interest" in the Real Estate as a "Mortgage Lien", but [Citi] did not attach any documentation and evidence to the Relief Motion as to [Citi's] interest in the Real Estate, as to the Irwin Mortgage, and as to any lien on the Real Estate.

**3.** On September 22, 2008, Citi filed a motion for relief from the automatic stay in the bankruptcy proceeding. In that motion, Citi claimed to have been granted a security interest in the Property before Barabas filed for bankruptcy on July 15, 2008.

9. The [c]ourt further finds that [Citi's] Relief Motion did not provide any notice to ReCasa and the creditors of the [b]ankruptcy [p]roceeding as to any interest of [Citi] in the Real Estate and as to Irwin Mortgage.

\* \* \*

16. The [c]ourt further finds that [Citi's] September 22, 2008 Relief Motion and the [b]ankruptcy [p]roceeding could not provide notice of any interest obtained by [Citi] pursuant to the [a]ssignment of [m]ortgage since the [a]ssignment of [m]ortgage was executed more than six months after the filing of the Relief Motion and after the termination and closure of the [b]ankruptcy [p]roceeding.

17. The [c]ourt further finds that no one has provided any evidence to this [c]ourt of the existence of any document providing notice of [Citi's] interest in the Real Estate and the Irwin Mortgage prior to the filing of ReCasa's June 13, 2008 [c]omplaint.

18. The [c]ourt further finds that no one has provided to this [c]ourt any document evidencing and providing notice of [Citi's] interest in Real Estate and Irwin Mortgage other than [Citi's] submission of an April 1, 2009 [a]ssignment of [m]ortgage recorded 22 months after the filing of ReCasa's [c]omplaint and six months after the [c]ourt's September 9, 2008 [d]efault [j]udgment and order of foreclosure.

19. The [c]ourt further finds that pursuant to Indiana Code [§ ] 32–29–8–2 and the findings herein, [Citi] failed to have its [a]ssignment of [m]ortgage properly placed on the mortgage record, and [Citi] is bound by this [c]ourt's September 9, 2008 [d]efault [j]udgment, September 16, 2008 [a]mended [d]efault [j]udgment, and order of foreclosure in

this cause of action as if [Citi] were a party to ReCasa's [c]omplaint.

20. The [c]ourt further finds that pursuant to Indiana Code [§ ] 32–29–8–3, ReCasa purchased the Real Estate under this [c]ourt's September 9, 2008 [d]efault [j]udgment, September 16, 2008 [a]mended [d]efault [j]udgment, and order of foreclosure at the Judicial Sale free and discharged of any interest of [Citi] when ReCasa purchased the Real Estate on or about January 23, 2009 without actual notice of [Citi's] April 20, 2009 recorded [a]ssignment of [m]ortgage of the transfer of any notice to [Citi].

(Appellant's App. pp. 8–10).

Citi now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Citi argues that the trial court erred when it declined to set aside ReCasa's amended default judgment. Specifically, Citi contends that ReCasa's failure to name MERS as a party defendant rendered its foreclosure judgment ineffective as to MERS and its assignee, Citi.

Indiana Trial Rule 60(B) provides that "a trial court may relieve a party from an entry of adverse judgment upon specified procedural, equitable grounds justifying relief from the legal finality of judgment." Our review of a trial court's decision on a motion for relief from judgment under Trial Rule 60(B) is limited to determining whether the trial court abused its discretion. *TacCo Falcon Point, Inc. v. Atlantic Ltd. Partnership XII,* 937 N.E.2d 1212, 1218 (Ind.Ct.App.2010). An abuse of discretion occurs where the trial court's ruling is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Id.* On review, we will not

reweigh the evidence, and we give the trial court's order substantial deference. *Id.*

The trial court held that Citi failed to redeem the Property within one year of the judicial sale, and, as a result, its claim is precluded by Indiana Code section 32–29–8–3, which provides that:

A person who purchases a mortgaged premises or any part of a mortgaged premises under the court's judgment or decree at a judicial sale or who claims title to the mortgaged premises under the judgment or decree, buying without actual notice of an assignment that is not of record or of the transfer of a note, the holder of which is not a party to the action, holds the premises free and discharged of the lien. However, any assignee or transferee may redeem the premises, like any other creditor, during the period of one (1) year after the sale.

█ The evidence shows that ReCasa filed a complaint to foreclose the Property on June 13, 2008. Then, ReCasa purchased the Property at a judicial sale on January 23, 2009, and sold the Property to Sanders on March 17, 2009. After the Property had already been sold, one month later, MERS assigned its interest in the Property to Citi and Citi recorded its interest on April 20, 2009. On October 23, 2009, over a year after ReCasa first foreclosed on the Property and nearly six months after the Property was sold and recorded, Citi sought to assert its interest in the first mortgage. Based on this information, it is clear that the trial court did not abuse its discretion when it found that I.C. § 32–29–8–3 precluded Citi's claim because it failed to intervene until more than a year after it first acquired interest in the Property.

█ However, our analysis does not end here. Citi goes on to argue that I.C. § 32–29–8–3 does not apply because MERS—as the mortgagee on record—

should have been given notice of ReCasa's initial foreclosure lawsuit instead of Irwin Mortgage. As a result, Citi maintains that its interest in the Property was not eliminated by ReCasa's foreclosure. This argument requires us to look at the relationship between MERS and Irwin Mortgage, which is a matter of first impression in Indiana. ReCasa and Sanders direct us to a factually similar case outside of our jurisdiction. While we note that this case is not binding on our court, we nevertheless find it instructive to our analysis.

In *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158, 161 (2009), the homeowner, Boyd Kesler (Kesler), obtained a loan from Landmark National Bank (Landmark). That loan was secured by a properly recorded mortgage to Landmark. *Id.* Approximately one year later, Kesler obtained a loan from Millennia Mortgage Corp. (Millennia). *Id.* To secure this loan, Kesler granted a second mortgage to MERS, who "act[ed] solely as the nominee" for Millennia. *Id.* This mortgage was also properly recorded. *Id.* The second note was then assigned to Sovereign Bank, although that assignment was never recorded. *Id.* MERS remained the mortgage holder of record. *Id.* Landmark filed a petition to foreclosure on its mortgage, serving and naming as defendants Kesler and Millennia, but not MERS. *Id.* Neither Kesler nor Millennia answered. *Id.* The trial court entered a default judgment, and the property was subsequently sold at a sheriff's sale on November 14, 2006. *Id.*

Thereafter, Sovereign filed an answer to the foreclosure petition, claiming a second mortgage on the property as the successor in interest to Millennia. *Id.* at 161–62. Sovereign also filed a motion to set aside or vacate the default judgment on the basis that MERS was a contingently neces-

sary party pursuant to Kansas statute.[4] *Id.* at 162. Sovereign claimed that because Landmark failed to name MERS as a defendant, Sovereign did not receive notice of the proceedings. *Id.*

The trial court entered an order finding that MERS was not a real party in interest and that Landmark was therefore not required to name it as a party to the foreclosure action. *Id.* The trial court also found that MERS was merely an agent or representative for Millennia, and that Sovereign's failure to register its interest precluded it from asserting any rights to the mortgage after the judgment was entered. *Id.*

On appeal, the Kansas supreme court discussed the nature of MERS relative to the lender for whom it served as a nominee. *Id.* at 166. The court took note of Black's Law Dictionary, which defines a nominee as " '[a] person designated to act in place of another, usu. in a very limited way' and as '[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others.' " *Id.* (quoting BLACK'S LAW DICTIONARY 1086 (8th Ed.2004)). The court also cited various cases from other jurisdictions in which courts have interpreted the relationship of MERS and a lender as an agency relationship. *Id.* See *In re Sheridan*, 2009 WL 631355, at *4 (Bankr.D.Idaho March 12, 2009) (MERS "acts not on its own account. Its capacity is representative."); *Mortgage Elec. Registration System, Inc. v. Southwest*, 2009 Ark. 152, 301 S.W.3d 1, 4 (2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's

agent"); *LaSalle Bank Nat'l Ass'n v. Lamy*, 12 Misc.3d 1191, 824 N.Y.S.2d 769, 2006 WL 2251721, at *2 (Sup.2006) (unpublished opinion) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.").

Ultimately, the Kansas supreme court found that in this case, MERS was little more than a "straw man" for Millennia (and later Sovereign). *Id.* at 166. The supreme court also noted that the mortgage repeatedly referenced the lender—not MERS—with respect to how notice was to be provided. *Id.* at 165–166. As such, the supreme court held that

> [e]ven if MERS was technically entitled to notice and service in the initial foreclosure action—an issue we do not decide at this time—we are not compelled to conclude that the trial court abused its discretion in denying the motion to vacate default judgment and require joinder of MERS and Sovereign.

*Id.* at 168.[5]

We choose to follow the persuasive reasoning of the *Landmark* case because it is factually similar to the present case. Like *Landmark*, Citi seeks to have the default judgment set aside based on the fact that it received its interest from MERS, which served as the mortgagee "solely as nominee" for Irwin Mortgage. (Appellant's App. p. 88). Thus, when Irwin Mortgage filed a petition and disclaimed its interest in the foreclosure, MERS, as mere nominee and holder of nothing more than bare legal title to the mortgage, did not have an enforceable right under the mortgage sep-

---

4. *See* K.S.A. 60–219(a).

5. A similar result was reached in *Mortgage Elec. Registration System, Inc. v. Southwest Homes of Arkansas*, 2009 Ark. 152, 301 S.W.3d 1, 7 (2009), where the Arkansas supreme court held that MERS had no property

rights with respect to the loan whatsoever, and therefore the foreclosure was allowed to stand despite the fact that MERS never received service of process because MERS had no interest to protect.

arate from the interest held by Irwin Mortgage. With respect to notice, just as the mortgage in *Landmark* referenced all notice to be sent to the lender, here, too, the mortgage states that notice to the lender should be sent to the lender's address, or "10500 Kincaid Drive, Fishers, IN 46038," which is the address of Irwin Mortgage. (Appellant's App. p. 88). Thus, we find that the trial court did not abuse its discretion when it declined to set aside ReCasa's amended default judgment.[6]

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it declined to set aside ReCasa's amended default judgment.

Affirmed.

ROBB, C.J., concurs.

BROWN, J., dissents with separate opinion.

BROWN, Judge, dissenting.

I respectfully dissent from the majority opinion with respect to its application of Ind.Code § 32–29–8–3 and its conclusion that MERS did not have an enforceable right under the mortgage.

### A. *Application of Ind.Code § 32–29–8–3*

The majority cites to Ind.Code § 32–29–8–3 and states that "[o]n October 23, 2009, over a year after ReCasa first foreclosed on the Property . . ., Citi sought to assert its interest in the first mortgage" and that Ind.Code § 32–29–8–3 "precluded Citi's claim because it failed to intervene until more than a year after it first acquired interest in the Property." Op. at 16. How-

ever, the last sentence of Ind.Code § 32–29–8–3 states that "any assignee or transferee may redeem the premises, like any other creditor, during the period of one (1) year after the *sale*." (Emphasis added). The judicial sale in this case occurred on January 23, 2009. (*See* App. at 133; Majority Opinion, op. at 16) Accordingly, the one-year period set forth in the statute began on January 23, 2009, not on the date ReCasa first foreclosed on the Property or the date the mortgage was assigned to Citi. Citi filed a motion to intervene and for relief from the amended default judgment on October 23, 2009, which was during the period one year after January 23, 2009. (Appellant's App. at 83) Therefore, I would not conclude that Ind.Code § 32–29–8–3 applies to preclude Citi's claim.

### B. *MERS as a Party Possessing Rights Under the Mortgage*

The majority states that it chooses to follow the reasoning of *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009), because it is factually similar to the present case. Op. at 17. As the majority notes, in *Landmark* the mortgagor obtained a loan from Millennia and granted a mortgage to MERS. 216 P.3d at 161. At some later time, the mortgage may have been assigned to Sovereign and Sovereign may have taken physical possession of the note, but the assignment was not registered with the county. *Id.* The mortgage granted to MERS in connection with the Millennia loan stated that MERS was acting "solely as the nominee" for the lender Millennia. *Id.* On appeal the Kansas court discussed the nature of the relationship between MERS and the lenders, noted that various courts have interpreted the

---

**6.** We need not address Citi's argument that MERS was denied its due process rights when MERS was not provided with notice because we find that notice to Irwin Mortgage, as lender, was sufficient.

relationship of MERS and a lender as an agency relationship, and found that "[t]he relationship that MERS has to Sovereign is more akin to that of a straw man than to a party possessing all the rights given a buyer." *Id.* at 166.

Unlike in *Landmark,* the mortgage in this case was "given to Mortgage Electronic Registration Systems, Inc. ('MERS'), (solely as nominee for Lender, as hereafter defined, and Lender's successors and assigns), *as mortgagee.*'" Appellant's Appendix at 88 (emphasis added). This language is set forth on the first page of the mortgage. (App. at 88) While there may be some ambiguity by the use of both the words "nominee" and "mortgagee" in the sentence here, the mortgage nevertheless does identify MERS, not lender Irwin Mortgage, as the mortgagee. (Appellant's Appendix at 88–94 (mortgage))

Moreover, two facts here—that MERS, not Irwin Mortgage, assigned the mortgage to Citi, and Irwin Mortgage's disclaimer of interest—indicate that MERS was more than a "straw man" and that MERS had a real interest in the Property. (App. at 127 (assignment), 51 (disclaimer))

I also observe that, while the notice provision relied upon in part by the majority specifies that "[a]ny notice *to Lender* shall be given … to Lender's address," *see* Appellant's Appendix at 93 (emphasis added), the mortgage also provided an address for MERS. (Appellant's App. at 88 (MERS address))

For the foregoing reasons, I would find that Ind.Code § 32–29–8–3 does not preclude Citi's claim and that MERS was not a "straw man" but had an enforceable right under the mortgage.