LAKE COUNTY TRUST COMPANY, as Trustee under Trust No. 2680, Plaintiff/Appellee,

v.

GAINER BANK, N.A., as Trustee under Trust No. P–5982, Defendant/Appellant.

Jack B. COHEN, Iva B. Cohen, Judell Investments, Co., Inc., Alfons Jacobs, Don Levinson, Rosalie Levinson, Lynn W. Ochstein, Jack Shaffner, Bernard Golner, Gerald Golner, and Gainer Bank, N.A., as Trustee under Trust No. P–5982, Cross–Complainants/Appellants, .

v.

LAKE COUNTY TRUST COMPANY, as Trustee under Trust No. 2680; Gainer Bank, N.A., as Trustee under Trust No. P–6121 and Betty Isay, Cross–Defendants/Appellees.

LAKE COUNTY TRUST COMPANY, as Trustee under Trust No. 2680, Plaintiff/Appellee,

v.

GAINER BANK, N.A., as Trustee under Trust No. P–5992, Defendant/Appellant.

Jack B. COHEN, Iva B. Cohen, Judell Investments Co., Inc., Don Levinson, Rosalie Levinson, Lynn W. Ochstein, Jack Shaffner, Bernard Golner, Gerald Golner and Gainer Bank, N.A., as Trustee under Trust No. P–5992, Cross–Complainants/Appellants,

v.

LAKE COUNTY TRUST COMPANY, as Trustee under Trust No. 2680; Gainer Bank, N.A., as Trustee under Trust No. P–6121 and Betty Isay, Cross–Defendants/Appellees.

No. 45A03–8904–CV–00134.

Court of Appeals of Indiana, Third District.

July 3, 1990.

Rehearing Denied Aug. 14, 1990.

John Kappos, Rosalie B. Levinson, Merrillville, for cross-complainants/appellants.

Richard F. James, Dyer, for cross-defendants/appellees.

STATON, Judge.

Gainer Bank, Trustee under Trusts No. P–5982 and P–5992, and beneficiaries of said trusts appeal from an order entered in the Lake Circuit Court denying their motions for relief from default judgments and sheriff's sales entered in favor of the Lake County Trust Company, as Trustee under Trust No. 2680. We revise and restate the issues raised for review as follows:

1. Whether the trial court abused its discretion in refusing to set aside the default judgments?

2. Whether the appellants had a vested interest in portions of the foreclosed property which was not extinguished by the default judgments?

3. Whether the trial court awarded unreasonable attorney fees?

We affirm in part and reverse in part.

The facts of this case are essentially undisputed. Kurt Isay and his wife, Betty Isay, did business as Kurt Isay and Associates, Inc., located at 7863 Broadway, Merrillville, Indiana. Mr. Isay, a real estate broker, gathered a group of investors to join him in entering a trust agreement with what is now known as Gainer Bank, N.A. On or about August 20, 1981 said trust, designated as Trust No. P–5982, entered a real estate purchase agreement with the Lake County Trust Company, as Trustee under Trust No. P–2680 (hereinafter referred to as Seller Trust). Under the terms of the agreement, Trust No. P–5982 was to pay Seller Trust $60,000 at the time of execution and the balance of $180,000 at a rate of $40,000 per year, culminating in a total of $240,000 with interest at the rate of 10½% per annum. Trust No. P–5982 was to be given immediate possession of said real estate with conveyance reserved until full performance of all contractual conditions. As a covenant in addition to other provisions, the parties agreed that Trust No. P–5982 would be entitled to conveyance of one acre of the subject property for each principal payment of $40,000 above and beyond the initial $60,000 payment. In order to receive this conveyance, Trust No. P–5982 was required to furnish a surveyed plat and legal description of the

property to be conveyed. Among the several provisions regarding rights of either party upon default, it was provided that Seller Trust had a duty prior to initiating legal action to serve written notice of default upon the purchasing trust at 7863 Broadway, Merrillville, Indiana.

Substantially the same beneficiaries as that of Trust No. P–5982 entered a second trust, designated as Trust No. P–5992, for the purpose of purchasing another piece of real estate from the Seller Trust. Under the terms of this agreement, Trust No. P–5992 was to pay Seller Trust the gross sum of $210,000 with interest at the rate of 10½%, payable in the amounts of $46,250 at the time of execution and the balance at $30,000 each year commencing March 30, 1982. The operative provisions regarding conveyance and default set forth in our discussion of the Trust No. P–5982 purchase agreement were included in this purchase agreement, with the proviso that a one-acre conveyance would occur for each principal payment of $35,000 above and beyond the $46,250 down payment after the purchasing trust provided a survey plat and legal description of the property to be conveyed.

The partnership agreement between the beneficiaries of Trusts No. P–5982 and P–5992 (hereinafter referred to as Purchasing Trusts) named Kurt Isay as managing partner. In May of 1984, Kurt Isay died. Following his death, Betty Isay maintained the office at 7863 Broadway and took over books and records pertaining to the Purchasing Trusts. Thereafter, the beneficiaries of the Purchasing Trusts dealt with Betty Isay as if she were the managing partner of the partnerships. Isay, who owned a percentage of beneficial interest in each trust, assumed such responsibilities as notifying the beneficiaries when payments were due, accepting payments at her office, depositing said payments in their respective accounts, and making payments to the Seller Trust. There was no evidence that the beneficiaries amended their partnership agreement to formally name a successor managing partner. The trial court noted that "[t]he evidence showed no objection by the Beneficiaries to Betty Isay performing

these functions, nor did there appear to be any attempts on the part of the Beneficiaries to oversee or check on her performance of these responsibilities." Record at 141, 142.

Isay eventually began embezzling funds intended for application to the Purchasing Trust's real estate agreements, as a direct result of which she failed to tender amounts due and owing to Seller Trust. Seller Trust commenced separate actions against the respective Purchasing Trusts seeking judgment for monetary damages and foreclosure of Purchaser's interests under the agreements by virtue of their failure to meet their annual payments. In each action, summons was issued against Purchasers and served by certified mail on Gainer Bank. Gainer Bank mailed the summons and complaints to Betty Isay at her business address. Isay failed to notify any of the beneficiaries of her receipt of the foreclosure actions or of the sheriff's sales which eventually occurred.

On September 24, 1987, Seller Trust applied for judgment by default against the Purchasing Trusts by virtue of their failure to appear. In October, 1987, the trial court entered default judgments in both actions. Determining that Seller Trust held prior rights as to both parcels of real estate and that it was owed $95,424.96 from Trust No. P–5982 and $114,697.42 from Trust No. P–5992, the trial court directed the sheriff to sell the subject real estate in foreclosure and to apply proceeds from said sale to satisfy court costs and Seller Trust's judgments. The properties were sold to Gainer Bank Trust No. P–6121 for amounts slightly in excess of those deemed owing by Purchasing Trusts.

On May 20, 1988, the Trustee and beneficiaries of the Purchasing Trusts filed their motions for relief from judgment pursuant to Indiana Rules of Procedure, Trial Rule 60(B)(1), (2), (3), and (8). The separate causes of action were consolidated in the trial court. After an evidentiary hearing, the trial court entered the following findings:

\*    \*    \*

18. The neglect or omission of Betty Isay to advise her Co–Beneficiaries of the Notice of Default and subsequent commencement of foreclosure proceedings on the parties' Real Estate Purchase Contracts is not excusable neglect. The neglect or failure to take proper legal action to prevent default judgments of foreclosure on the part of Betty Isay should be imputed to her Co–Beneficiaries given their long acquiescence in her acting for them and in assuming the responsibilities of managing their investments.

19. The evidence showed that Betty Isay collected contributions from her co-beneficiaries and co-partners, intended for application to the real estate agreement purchase price, and converted said funds to her own use, thereby allegedly causing the defaults in the real estate purchase contracts. However, the actions of said Betty Isay are not attributable to nor should be used against Seller, where the co-beneficiaries failed to monitor the actions of Betty Isay.

20. The Purchasers have failed to prove the existence of a meritorious defense to Seller's Complaints for foreclosure. Purchasers' willingness to pay the unpaid balances of the Real Estate Purchase Contracts does not amount to a meritorious defense. (Citation omitted).

21. The Cross–Complainants have failed to sustain their burden of affirmatively demonstrating their entitlement to relief under Indiana Trial Rule 60(B).

   \*     \*     \*     \*     \*     \*

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Cross–Complainants' Motion for Relief From Default and Judgment of October 19, 1987, and for Vacation of the Sheriff's Sale and Deed of November 4, 1987, pursuant to Indiana Trial Rule 60(B), be and the same is hereby Denied.

Record at 132; 135, and 143; 146.

This appeal ensued.

### I.

### *Abuse of Discretion*

The beneficiaries and Trustee of Purchasing Trust (hereinafter referred to as Beneficiaries) first contend that the trial court abused its discretion in refusing to set aside the default judgments. Beneficiaries argue that the undisputed evidence showing that Isay concealed notice of the impending actions in foreclosure and sheriff's sales to cover up her embezzlements is sufficient to meet the requirements for relief from default set forth in Indiana Rules of Procedure, Trial Rule 60(B). We disagree.

■ In order to acquire relief from judgment under T.R. 60(B), the moving party must first demonstrate his entitlement to relief under one of the eight provisions for relief under T.R. 60(B) and then demonstrate that he has a meritorious defense to the action. *Graham v. Schreifer* (1984), Ind.App., 467 N.E.2d 800, 802. Due to the unique factual circumstances presented in such cases, the trial court is afforded broad discretion in determining whether to set aside a default judgment. *Security Bank & Trust Co. v. Citizens National Bank of Linton* (1989), Ind.App., 533 N.E.2d 1245, 1247, *trans. denied.* Thus, our scope of review is limited to the question of whether the trial court abused its discretion. *Id.* A trial court abuses its discretion only when it has reached a result clearly against the logic and effect of the facts and circumstances before it. *Fulton v. Van Slyke* (1983), Ind.App., 447 N.E.2d 628, 636.

■ Under T.R. 60(B)(1), a party is entitled to relief from a judgment by default where the judgment was entered as a result of mistake, surprise or excusable neglect. Beneficiaries contend that the trial court abused its discretion in finding that it had not demonstrated excusable neglect under facts showing that notice of the impending foreclosure actions and sheriff's sales was concealed for the purpose of covering up the criminal actions of one of the beneficiaries of the trusts. Under normal circumstances, we would be inclined to agree. *See e.g. Conrad v. Olds* (1941), 110 Ind.App. 208, 37 N.E.2d 297 (notice to agent acting within scope of authority is notice to principal, but agent's knowledge

or notice will not be imputed to his principal where agent's conduct raises clear presumption that he would not communicate fact in controversy). However, we note that there are no fixed rules for determining what facts or circumstances constitute excusable neglect under T.R. 60(B)(1). *International Vacuum, Inc. v. Owens* (1982), Ind.App., 439 N.E.2d 188, 190, *trans. denied.* The question of whether excusable neglect has been demonstrated is left to the discretion of the trial court. *Id.*

As shown in its findings, the trial court determined that neglect in this case was inexcusable regardless of the facts surrounding Isay's concealment of notice because the beneficiaries of the Purchasing Trusts acquiesced to her management of the investments and failed to properly monitor her actions. The record shows that Beneficiaries could have accessed the records of the trusts at any time upon request, but failed to so request. Additionally, it was shown that Beneficiaries failed to effectuate alterations in the trust documents and purchase agreements after Kurt Isay's death to establish a new managing partner or new mailing address for notice of default. In short, the trial court could have determined that the breakdown of communication between Beneficiaries and Seller Trust was a result of a reckless failure of the Beneficiaries to properly protect their interests in the Trust. We cannot consider that the trial court abused its discretion in light of the evidence supporting its finding.

Beneficiaries expend a great deal of energy discussing the question of whether they were required to prove a meritorious defense. In a convoluted argument, Beneficiaries contend that because they could not be imputed with notice of the pending default judgments or sheriff's sales, they were entitled to relief from default without the added burden of being required to prove a meritorious defense. There are several flaws in this argument.

We first point out that Beneficiaries have failed to prove entitlement to relief under T.R. 60(B)(1), thus the question of whether they had a meritorious defense to the ac-

tion in default is moot. Secondly, the case relied on by the Beneficiaries provides no comfort for their cause. In *Peralta v. Heights Medical Center, Inc.* (1988), 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75, the United States Supreme Court held that a default judgment entered without notice to the defaulting party was void, and thus that requiring the defaulting party to show a meritorious defense under the only procedure available for relief violated his right to due process of law. Here, there is no question that Gainer Bank, as Trustee, was properly served with process. This undisputed fact defeats the applicability of *Peralta.*

█ Beneficiaries also argue that they are entitled to relief under T.R. 60(B)(8), which provides that relief from judgment can be acquired for "any reason justifying relief from the operation of the judgment, other than those reasons set forth in subparagraphs (1), (2), (3), and (4)." Relief under this subsection is reserved for those cases where exceptional circumstances justify extraordinary relief. *Graham, supra,* at 803. Beneficiaries contend that

> [a]n elderly widow with no prior record of impropriety turning into an embezzler, improper interruption and interception of process, lack of prejudice to the non-defaulting parties [Beneficiaries offered to pay principal due, interest accruing during default at 14%, expenses and reasonable attorney fees], depriving the Landbuyers of their day in Court in regard to interpretation of a Contract vesting acreage in them and an award of excessive and unlawful attorney fees [discussed *infra*] is an unfortunate combination of events deserving T.R. 60(B)(8)'s extraordinary relief.

Brief of Appellant at 36.

We disagree.

In *Graham,* we determined that relief from judgment under T.R. 60(B)(8) was appropriately entered under circumstances which prevented the defaulting party from receiving notice within sufficient time to petition for relief from default under T.R. 60(B)(1) (motion for relief from default under sections 1, 2, 3 and 4 of T.R. 60(B) shall

be filed within one year of entry of order, judgment or proceeding). There, relief from judgment was afforded more than ten years after judgment was entered where a unique combination of events culminated in the defaulting party's failure to receive notice of: his status as a defendant in his individual capacity; his attorney's withdrawal; the trial date; or the entry of judgment. Although this case might be likened to that before us, our determination in *Graham* was that the trial court did not abuse its discretion in granting relief from judgment.

In the case before us, Beneficiaries filed their motion for relief from default within the proper time limitation for review under T.R. 60(B)(1). T.R. 60(B)(8) specifically provides that it is exclusive of other remedies available under section 1 through 4. *See Blichert v. Brososky* (1982), Ind.App., 436 N.E.2d 1165. We conclude that the facts presented in this case were properly reviewed under T.R. 60(B)(1) and thus relief under the provisions of T.R. 60(B)(8) is unavailable.

## II.

### *Vested Interests*

██ Beneficiaries next contend that they had a vested interest in more than four acres of the land which was sold at the sheriff's sale by virtue of that portion of the contract which provided for conveyance of one acre parcels of property upon payment of specified principal amounts. Although they admit to not having demanded or taken conveyance of the property, Beneficiaries argue that the issue of whether they were entitled to the acreage regardless of default was not raised by the complaint for foreclosure or addressed by the trial court in entering the default judgments, and thus that they cannot be deemed to have admitted to forfeiture of their claim to the property by the default judgments. We disagree.

It is indeed the rule that, "where a default judgment is entered, only those issues presented by the complaint can be deemed concluded; the defaulting party cannot be charged with admitting matters not within the complaint by his default." *State Exchange Bank of Culver v. Teague* (1986), Ind.App., 495 N.E.2d 262, 267. It is undisputed that Beneficiaries had tendered amounts sufficient to entitle them to the conveyance of a total of more than four acres of land. However, after setting forth a description of the entire real estate purchased under the real estate purchase contracts, each complaint alleged that, "... Gainer Bank, N.A., as successor in interest to Gary National Bank as Trustee ... claims some interest in and to said real estate adverse to plaintiff's right, title, and interest therein and which adverse claims are without right and unfounded and constitute a cloud upon plaintiff's title to said real estate." Record at 9–10, and 81. It was thereafter prayed that the claims of Gainer Bank be declared null and void and that title in the parcels of real estate be forever quieted against Gainer Bank. Record at 10, and 81. As a result, the entry of default judgments upon these complaints was conclusive as to Beneficiaries' interest in all of the subject real estate.

## III.

### *Attorney Fees*

██ The real estate purchase agreements in this case provided that the defaulting party would pay attorney fees. Seller Trust was awarded a total of $16,500 in attorney fees upon entry of default. Seller Trust's attorney testified that he had provided the numerical amounts awarded upon entry of default based upon a contingency rate of 8.5%. Seller Trust's attorney refused to disclose time expended in pursuing the default proceedings.

Beneficiaries provided expert testimony showing that a reasonable noncontingent fee for a foreclosure would be between $700 and $800, and that a fee beyond $2,000 would be unjustifiable on an hourly basis. He also testified that the holder of a document that provides for attorney fees in case of default has no right to employ an attorney on the basis of a percentage of value received. Nonetheless, the trial

court allowed the attorney fee award to stand.

For their final argument, Beneficiaries contend that the trial court erred in awarding attorney fees based upon a contingent fee contract. Beneficiaries also argue that the amount awarded was excessive and not supported by the evidence. Seller Trust argues that the amount of the attorney fees award is irrelevant because provided for by the amounts recovered in the sheriff's sale. However, Beneficiaries rightly point out that any amounts recovered in excess of the default judgment awards would inure to their benefit.

In *Berkemeier v. Rushville National Bank* (1984), Ind.App., 459 N.E.2d 1194, we determined that "[a] contingent fee contract entered into between an obligee and his attorney after the default of the obligor is not binding upon the obligor absent his agreement. The fee can not be further bolstered by time spent unsuccessfully defending an inappropriate or unenforceable fee." *Id.* at 1197. This is true even when the obligor agreed by contract to pay reasonable attorney fees upon default. *Id.*

We conclude that the trial court erred in awarding attorney fees in this case based upon the above-referenced authority. Because there was no evidence presented regarding the amount of attorney hours spent in prosecuting the default judgment, we cannot determine the reasonableness of the fee awarded. We therefore remand this cause to the trial court for a hearing upon the issue of attorney fees. *See Berkemeier v. Rushville National Bank* (1982), Ind.App., 438 N.E.2d 1054 (except for routine cases involving relatively small amounts, attorney fee award in cases where a contract provides for payment of reasonable attorney fees upon default must be supported by evidence).

In all other things, the trial court is affirmed.

HOFFMAN, P.J., and CONOVER, J., concur.