**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT TAD BOHLSEN:

**KAREN CELESTINO-HORSEMAN**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE FINDING OF<br>CONTEMPT AGAINST TAD BOHLSEN<br>DURING THE PROCEEDINGS OF<br><br>HEALTH AND HOSPITAL CORPORATION<br>OF MARION COUNTY,<br><br>    Plaintiff,<br><br>        vs.<br><br>DICKSON STREET INVESTMENTS, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 49A04-1401-PL-34<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David Certo, Judge
Cause No. 49F12-1003-PL-13428

**July 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant Tab Bohlsen is a partner in Defendant Dickson Street, LLP, which owned an Indianapolis house that was severely damaged by fire in 2009 ("the House"). Plaintiff Health and Hospital Corporation of Marion County ("HHC") issued an order to repair and, later, filed an unsafe building complaint against Dickson Street. Over the course of several hearings, many of which Bohlsen failed to attend, the trial court found that Bohlsen had, at one point, given false testimony under oath and reiterated a previous order that Bohlsen make the necessary arrangements to demolish the House. The trial court later conducted a hearing regarding whether Bohlsen should be held in contempt for his false statements, after which it found Bohlsen in direct contempt and sentenced him to twenty-one days of incarceration. Following Bohlsen's motion for relief from judgment, the trial court amended its previous order to provide that Bohlsen was guilty of indirect contempt. Bohlsen contends that he is entitled to relief from the trial court's judgment because (1) the trial court did not appoint a special judge to hear the contempt allegation and (2) the trial court issued neither a rule to show cause nor a contempt information. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

Most of the facts underlying this appeal, which are not in dispute, were related by the trial court in an order issued on June 22, 2011:

### Findings of Fact

1) Dickson Street Investments, LLC, owns [the House, located] at 915-17 Woodruff Place West Drive.
2) On August 9, 2009, a fire severely damaged [the House]. [HHC] issued an order to repair on August 11, 2009.

2

3) On December 2, 2009, an administrative law judge for the Department of Metropolitan Development held a hearing, and the Defendant failed to appear. The administrative law judge determined that the parties had proper notice and assessed a civil penalty on the Defendant of five thousand dollars ($5,000) for "willful failure to comply" with the order to repair.

4) On April 21, 2010, [HHC] filed an unsafe Building Civil Complaint in Environmental Court seeking civil penalties, appointment of a receiver, emergency demolition by a licensed contractor, and other relief.

5) On May 18, 2010, Tad Bohlsen appeared on behalf of Dickson Street Investments, LLC, but without counsel and after the time he was ordered to appear. After meeting with [HHC's] attorney, Mr. Bohlsen signed an agreed judgment on behalf of Dickson Street agreeing that "Defendant admits each and every allegation of the Plaintiff's Complaint" and promising "to correct all violations existing at the property listed above so that the property meets the minimum standards as set forth in The Indiana Unsafe Building Act, IC 36-7-9, which includes keeping the property clean and secure." The agreed judgment set a court date of June 1, 2010, at 9 a.m. to complete repairs to "chimney, fence, windows, and doors" and to present a "plan for future repairs" or face a five hundred dollar ($500) fine.

6) On June 1, 2010, despite signing the Agreed Judgment, Mr. Bohlsen failed to appear in court. Commissioner Melissa Kramer heard testimony from Inspector Martin Fields of the Marion County Health Department about [the House]. Inspector Fields testified that the property had no roof and that the City, not the owner, had removed a portion of the roof that was in danger of collapse. He also testified that the second floor had collapsed into the first floor and that the owner, Dickson Street Investments, LLC, had not made any repairs to the structure since the fire occurred. Mr. Fields stated that there are occupied homes within ten (10) feet of either side of the burned residence and that the County, not the owner, had boarded it. A neighbor across the street, Susan Rice, testified that she and other neighbors removed broken glass from the sidewalk in front of the burned residence and that they also removed trash from the front yard that the owner failed to abate.

Amy Jones, the attorney for [HHC], stated that Mr. Bohlsen failed to appear on time on the morning of May 18 as ordered, causing an inspector for [HHC] and several interested neighbors who wanted to testify to lose the opportunity to do so. Because she did not receive the testimony of the inspector or the neighbors, Ms. Jones stated that she did not realize the severe damage to the residence and the potentially

3

imminent collapse of the roof. Ms. Jones stated that she never would have entered into the agreed judgment with Dickson Street Investments if Mr. Bohlsen had arrived on time and she and the Court had been able to receive testimony about the condition of the residence.

After receiving the testimony and evidence, Commissioner Kramer determined that "the property is in such a severe state that it warrants demolition" and ordered Dickson Street Investments to appear for a compliance hearing on June 8, 2010, at 9 a.m. She also imposed a fine of one hundred dollars ($100) per day until the Defendant provided a bid to demolish the unsafe structure and a time line for demolition. Commissioner Kramer issued a body attachment for Mr. Bohlsen, the managing partner of the Defendant who had appeared previously on behalf of Dickson Street Investments, LLC, and promised to appear on June 1.

7) On June 8, 2010, Judge Michael Keele received testimony from Mr. Bohlsen, who appeared in person and without counsel on behalf of Dickson Street Investments, LLC. Mr. Bohlsen arrived late for court at 10:05 a.m. for a hearing set at 9:00 a.m. Mr. Bohlsen testified that he had obtained three bids to fix the roof but did not present any bids to the Court. He stated that the bank that issued a loan to Dickson Street Investments on the property took all $180,000 in proceeds from insurance on the residence, leaving no money for repairs. Mr. Bohlsen also testified under oath that he had repaired the fence securing the property and stated that he had come to court "to ask for a chance to get bids to fix the roof," a statement inconsistent with his testimony that he had obtained bids to repair the roof.

Inspector Fields testified that the Defendant had performed no work at the property and that there had been no improvements to the fence since the last hearing. Inspector Fields also testified that the foundation at [the House] had cracked and was breaking apart. Inspector Fields stated that the reason [HHC] initially issued an order to repair instead of an order to demolish is because the property is in a historic district and requires additional approvals to demolish.

At the conclusion of the hearing, Judge Keele reaffirmed the order to demolish and the one hundred dollar ($100) daily fine and ordered the Defendant to apply to the Indianapolis Historic Preservation Commission (IHPC) for a certificate of appropriateness (COA) to demolish the structure. Judge Keele also ordered the Defendant to appear on July 20, 2010, at 9:00 a.m. to demonstrate a time line for demolition and extended the daily fine until the Defendant filed an application to demolish, secured a bid to do so, and submitted a plan for demolition to the Court.

4

8) On July 20, the Court granted Dickson Street Investments an additional week to file a motion to reconsider the demolition order.

9) On July 27, 2010, Commissioner Kramer heard Mr. Bohlsen's request for a continuance to hire an attorney and granted a "final continuance" of one week to do so over the Plaintiff's objection.

10) On August 31, 2010, Mr. Bohlsen did not appear for court as ordered, nor did any attorney or legal representative appear on behalf of Defendant Dickson Street Investments, LLC. However, a man named Steve Waltman appeared and stated that he is a property manager for Mr. Bohlsen and that Mr. Bohlsen had asked him to appear in court. Over the Plaintiff's objection, Mr. Waltman told the Court that he "helps out" Mr. Bohlsen on various properties and that Mr. Bohlsen was "out of town." The Court also received a document by fax at 5:23 p.m. on the day before the hearing that purported to be a "Verified Complaint Requesting Amendment of Order to Demolish and Motion to Continue" signed by Mr. Bohlsen personally. The Plaintiff observed that the motion had not been filed in compliance with the Court's trial rules and asked for a finding of contempt of court and jail time for Mr. Bohlsen for his personal conduct. Commissioner Kramer denied the request for continuance, rejected the purported "complaint" because it had not been timely filed, issued a warrant for the arrest of Mr. Bohlsen for contempt of her prior order to appear, fixed a cash bond of two thousand, five hundred dollars ($2,500), and reset the matter one week to August 10.

11) On August 10, 2010, Mr. Bohlsen again appeared without counsel as the representative of Dickson Street Investments, LLC. He stated that he missed court because he was "out of town for work, meeting with a banker about the roof on this house." Commissioner Kramer informed Mr. Bohlsen that his behavior was "unacceptable," and she noted the numerous hearings that the Court had set and reset because Mr. Bohlsen had not appeared on time or failed to appear at all. Commissioner Kramer also stated that, "I gave you two continuances that I should not have." She reaffirmed her demolition order and fine and gave Mr. Bohlsen one additional week to file paperwork with the IHPC to demolish the structure, "or I will find you in contempt and put you in jail."

12) On August 17, 2010, Judge Pro Tem Cheryl Rivera was presiding. Mr. Bohlsen appeared again, this time with attorney Jeff Berg, who entered his appearance the day before. Mr. Berg apologized to the Court "on behalf of my client for not taking this matter too seriously." Mr. Berg tendered a motion to set aside the judgment to demolish, which was denied by the Court. [HHC]'s attorney noted that the Defendant had

5

not filed an application to demolish the structure and had paid no fee. She asked again that Mr. Bohlsen be jailed for contempt. The Court took the request under advisement and gave the Defendant another week to file the paperwork to demolish [the House].

13) On August 24, 2010, Judge David Certo was presiding. Mr. Bohlsen again appeared pro se on behalf of Dickson Street Investments, LLC, and stated that he had tried repeatedly to contact his attorney, Mr. Berg, and was unsure why he withdrew. Mr. Bohlsen denied that he requested Mr. Berg to withdraw and stated that "I believe Mr. Berg might have misunderstood something that was said." Ms. Jones, the attorney for [HHC], then produced the file stamped copy of Mr. Berg's motion to withdraw, which indicated Mr. Berg made the motion to withdraw on August 20th after "Defendant requested that the undersigned counsel withdraw his appearance in this matter." She also objected to Mr. Bohlsen's conduct in court, including his lack of attention to the proceedings by looking out the window and working on his hand-held media device.

Mr. Bohlsen tendered to the Court a certificate of appropriateness from the IHPC. In response, Ms. Jones demonstrated to the Court that Mr. Bohlsen signed into court late at 9:25 a.m. for a 9:00 a.m. hearing, left court, went to the IHPC offices downtown, applied for and obtained a COA to repair, not a certificate of appropriateness to demolish, as had been ordered repeatedly, and returned to court for the hearing. When asked by Judge Certo why he obtained a COA to repair (with an application fee of $250) instead of a COA to demolish (which requires an application fee of $1,000), Mr. Bohlsen said "I don't know that there is a huge difference between one or the other," and "I felt that a COA to repair is less expensive, so I thought money would be better spent on repairing the property." Mr. Bohlsen also stated that he was "not interested" in demolishing the property. Judge Certo found Mr. Bohlsen's personal conduct in court to constitute direct contempt of court, causing delay in the Court's calendar and defiance toward the Court and its orders. Judge Certo offered Mr. Bohlsen a choice of paying a fine of $1,000 or spending two days in jail, and Mr. Bohlsen chose to pay the fine. Judge Certo then reaffirmed the order to demolish and reset the matter for September 7 for Dickson Street Investments, LLC, to demonstrate compliance.

14) On August 27, 2010, Jeffrey Bellamy of the law firm Thrasher, Buschman & Voelkel, P.C., entered an appearance on behalf of Dickson Street Investments, LLC. On September 8, 2010, the Court granted Mr. Bellamy's motion to withdraw at Defendant's request, stating the Defendant had obtained other Counsel.

6

15) On September 7, 2010, [HHC] and Defendant's new attorney Patrick Dietrick filed a joint motion to continue the case for the purpose of the "Defendant to provide a COA with staff approval for roof repairs." The motion was signed by Mr. Dietrick.

16) On September 14, 2010, Judge Certo was presiding. Brandon Elward of Collignon and Dietrick, P.C., appeared on behalf of Dickson Street Investments, LLC, without Mr. Bohlsen. The parties stated that they appeared in court on September 7 and signed an agreed order that gave Dickson Street an opportunity to repair [the House] if the Defendant secured a COA to repair the roof from the staff of the IHPC by September 14. Although the Defendant had filed an application to demolish the property to cure the prior direct contempt of Court, Dickson Street Investments and Mr. Bohlsen failed to secure a COA to repair the roof prior to the hearing on September 14 as agreed in the joint motion to continue. On behalf of Dickson Street Investments, Mr. Elward tendered a drawing of the proposed repairs that was dated August 16 but was not submitted to the IHPC until the evening of September 13, a price list from Menard's for materials, and an estimate that the roof would cost between $7,000 and $8,000 for materials and approximately $5,000 for labor.

Mr. Bohlsen arrived to court 20 minutes after the hearing began. The IHPC's staff reviewer, Meg Purnsley, testified that the items presented in court would not be sufficient to obtain a staff-approved COA for roof repair and stated that she gave Mr. Bohlsen a detailed list of additional items he needed to obtain the COA on September 10, four days before the court hearing. Ms. Purnsley stated that she could issue a staff-approved COA for roof repair "within a matter of minutes" if the Defendant would provide the documents required to meet the IHPC's mandatory guidelines for staff approval. Mr. Bohlsen denied that Ms. Purnsley ever gave him a list of requirements and continued to talk about repairing [the House].

Mr. Bohlsen then testified under oath that he only saw "the duly elected judge" (Judge Keele) one time and that "My discussion with him indicated to me that it would be acceptable to repair the property." Mr. Bohlsen's sworn testimony about Judge Keele's statement and order was an unambiguously false account of Judge Keele's findings and order of June 8, 2010. Mr. Bohlsen and his counsel then produced drawings that they presented to Ms. Purnsley at 5 p.m. the night before the hearing. Ms. Purnsley testified that the drawings were not to scale or sufficiently detailed and that the Defendant had failed to include an estimate of the cost of work, a time line for the project, and proof of financial responsibility to carry out the repairs. Ms. Purnsley provided

7

a detailed list of items that would be required to obtain staff approval for a COA to repair the roof, and the Court reiterated it for the parties. Ms. Jones objected to any additional delay, noting that the property in question was $14,187 in arrears on property taxes and again requested a contempt finding and jail for Mr. Bohlsen personally. She produced for the Court the joint motion to continue filed by the parties on September 7 wherein a continuance was granted on the Defendant's promise to appear on September 14 with a staff-approved COA to repair the roof. Mr. Elward objected, stating that he never gave a copy of the terms of the joint motion to continue to Mr. Bohlsen. Over [HHC]'s objection, the Court gave the Defendant until September 17th at 9 a.m. to satisfy the requirements of the IHPC and obtain a COA to repair <u>or</u> to verify that he has abandoned his attempts to repair and will proceed with demolition as previously ordered by four judicial officers. Mr. Bohlsen was warned by the Court about his personal conduct and was informed that "Failure to follow any order of the Court will result in jail time" for him for his continued and willful hindering and disrupting the Court's calendar and disobeying the Court's prior lawful orders.

17) On September 17, Mr. Bohlsen and attorney Patrick Dietrick appeared on behalf of Dickson Street Investments. Despite the Court's prior orders, Mr. Bohlsen expressed his intention on behalf of Dickson Street Investments, LLC, to repair [the House]. Although the Defendant had not secured a COA to repair, the Court received testimony from witnesses and exhibits intended to demonstrate that the Defendant could do so. Ms. Purnsley testified that she informed Mr. Bohlsen that he had not submitted proof of financial ability to complete the project and that the estimate for repair, project time line, and scope of work did not match the drawings of the project tendered by the Defendant. She also pointed out that the notes on the cost estimate did not match the repair notes and scope of work. To secure staff approval, Ms. Purnsley testified that all the documents must be sufficiently detailed and the contents must agree with each other. She testified that she notified Mr. Bohlsen by e-mail of the deficiencies in the application, particularly the missing financial information. Mr. Bohlsen testified that he was "trying to recall" if he had received the e-mail and then denied ever getting it.

Mr. Bohlsen presented a bank statement to the Court dated August 31, 2010, for an entity called Pine Financial, but he failed to demonstrate what that entity is, how it might be related to the project, or if he had the authority to draw on its funds. Mr. Bohlsen testified that he and his wife are the sole members of Dickson Street Investments, LLC, and that Pine Financial is "another Indiana LLC" owned by Mr. Bohlsen

8

and his wife. He stated Pine Financial owned [the House] before Dickson Street purchased it. Mr. Bohlsen also testified that he had "other sources" of capital and that "we own other companies." He further stated in response to his attorney's questions, "We are looking for other sources" of funding and he is "shaking the bushes trying to find money." After receiving detailed and lengthy testimony, the Court concluded that Dickson Street failed to secure a COA to repair as they had promised and as the Court ordered. The Court also found that the Defendant had not demonstrated financial ability to complete even the first phase of repairs under a certificate of appropriateness to repair the roof, even though the ability to pay is the most fundamental requirement of any repair project.

In the face of the Court's promise of direct contempt for Mr. Bohlsen's continued and willful lack of honesty in his testimony, wrongful blame of IHPC staff for his inability to meet their requirements, and ongoing disruption of the Court's calendar, Mr. Bohlsen promised on behalf of Dickson Street to demolish the structure as ordered by the Court. At the conclusion of the hearing the Court entered a finding in its minutes that Mr. Bohlsen and Dickson Street Investments, LLC, were not in direct contempt on the promise to abandon repairs and demolish the structure as ordered by three prior judicial officers. The Court set a compliance hearing on demolition for November 18, 2010.

18) On November 16, 2010, the Court granted Collignon and Dietrick's motion to withdraw.

19) On November 17, 2010, the Court granted Mr. Collignon's motion to re-enter as attorney of record but denied a motion to continue the compliance hearing because the daily fine imposed by Commissioner Kramer and Judge Keele was ongoing and could be cured by the Defendant filing an application to demolish, securing a bid to do so, and submitting a plan for demolition to the Court.

20) On November 18, 2010, the parties agreed that the IHPC had continued the hearing on Defendant's application to demolish the structure, and they agreed to reset the compliance hearing on December 16, after the IHPC's next meeting on December 1.

21) On December 7, 2010, the Court granted Collignon and Dietrick's motion to withdraw as counsel for the Defendant.

22) On December 15, 2010, Katherine Starks, William Richards, and Scott Richards entered an appearance as counsel for the Defendant and requested a continuance of the hearing set for December 15, as well as a pre-trial conference. The Court denied the request to continue, instead vacating the hearing and giving Ms. Starks the opportunity to file any response to [HHC]'s reply to Defendant's motion to recuse.

The Court also denied the request for pre-trial conference and reset the compliance hearing on demolition and fines for January 6, 2011, at 9 a.m.

23) On January 6, 2011, attorney Ryan Frasher entered an appearance as counsel for the Defendant. The Court received testimony that Ms. Vickie Bohlsen, a member of Dickson Street and the wife of Mr. Bohlsen, requested a continuance on Dickson Street's application for a COA to demolish at the IHPC's meeting in November and that the IHPC dismissed the application when Dickson Street's property manager Steve Waltman appeared at the IHPC's meeting but was unprepared to address the application. The Court also heard testimony that the Defendant's application for a certificate of appropriateness to repair the property remained pending with the IHPC, although there had been no improvements to the structure. The Court reset the matter to February 1 and ordered the Defendant to pay $3,000 in outstanding fines, withdraw the application for COA to repair the property, and to comply with the IHPC's procedures for application to demolish and required notice to neighbors for the March IHPC meeting.

24) The Court's hearing on February 1 was reset due to unsafe weather conditions. On February 8 Mr. Frasher appeared for the Defendant. The Court received testimony about a limb which fell from [the House's lot] onto a neighboring property, damaging a fence. The Court also found the property was no longer secured from entry. In addition, the Court found that the Defendant paid $3,000 in fines and that the IHPC issued a certificate of appropriateness to repair the subject property over the names of applicants "Steve Waltman for Tad Bohlsen with Pine Financial." The Court reset the matter for March 8 and ordered the members of Dickson Street to appear to explain their non-compliance with the Court's orders, as Mr. Frasher could not do so. The Court also ordered Dickson Street to pay another $3,000 of the outstanding $22,000 in fines, to withdraw the COA to repair, and to comply with all deadlines for applying for a COA to demolish the property at the IHPC's March meeting or face penalties for contempt.

25) On March 3 Mr. Frasher appeared and asserted that there was a new member of Dickson Street named Mr. Mecwan, who appeared for the Defendant. However, Mr. Mecwan was unable to answer any questions about the case history, the physical condition or the property, or the Court's orders and testified that he had never visited the property. The Court found that the Defendant failed to pay the $3,000 in outstanding fines as ordered. The Court also found that the Defendant filed a one page application for COA to demolish the property with the IHPC and that it notified IHPC to withdraw the COA to repair. The Court noted

that the application listed a cost to demolish of "$15,000" but that the time line for demolition dated August 20, 2010, stated that the demolition would cost "$19,900." The Court ordered the Defendant to comply with the IHPC hearing on April 6 or for all members of Dickson Street to appear in court on April 12 to show cause why they should not be found in contempt. The Court found that the Defendant removed the tree limb from the neighboring property, fixed the fence, and secured the property.

26) On April 11 the Court granted Mr. Frasher's motion to withdraw as counsel for the Defendant.

27) On April 12 Mr. David Kress of Benesch Friedlander Coplan & Aronoff appeared on behalf of the Defendant. Steve Waltman testified that he directed a work crew to demolish the east structural wall of the property without a permit and that Mr. Bohlsen directed him to file the application for the COA to repair the property in January 2011. The Court found that the Defendant failed to pay $3,000 toward the outstanding fines as ordered and engaged in demolition work on the site without a permit and in violation of the Court's orders and local ordinance. The Court also found that the IHPC issued a certificate of appropriateness to demolish the property sought by Mr. Kress on behalf of the Defendant, despite Mr. Kress' request for a continuance at the meeting. Because of the Defendant's willful non-compliance with the Court's repeated orders to demolish the property, the Court ordered [HHC] to board and then to demolish the unsafe structure.

28) On May 6 the Defendant notified the Court of its filing of a petition for judicial review of the IHPC's approval of the Defendant's application for a COA to demolish the property. The Defendant alleged that the Commission wrongfully failed to grant the Defendant's motion for a continuance pursuant to its rules at the hearing on April 6 and asserted that pursuant to "Rule 7 of the rules of the IHPC, all proceedings and work on [the House] are automatically stayed."

29) On May 17 the Court conducted a hearing. The Court found that the Defendant failed to pay any outstanding fines as ordered since April 12. Because there was no progress abating the violations, the Court imposed a daily fine of $150 until the unsafe structure is demolished. The Court reset the matter for June 28 for the Defendant to show cause why it should not be held in contempt for failing to pay fines as ordered, allegations of wrecking on the property without a permit, obtaining a permit to make structural repairs to the property in violation of the Court's order to demolish, and the veracity of Mr. Bohlsen's statements in court and under oath on September 14th when he promised on behalf of the Defendant to abandon all attempts to repair the

property and to demolish it.

30) On June 14 the Court reaffirmed its repeated orders from four judicial officers to demolish the unsafe building.

Conclusions of Law

1) Almost two years after a fire that severely damaged [the House], Defendant Dickson Street Investments, LLC, has not repaired or demolished the property as required by law. Dickson Street Investments has failed repeatedly to repair the property and has resisted the orders of four judicial officers to demolish the unsafe structure, despite the fact that the neighboring residences are occupied.

2) The Defendant continues to refuse to comply with the Court's orders to demolish the property, despite the Defendant's promises to do so. These promises to comply appear to have been made solely to avoid the sanctions of direct contempt.

3) The Defendant filed an application for a COA to demolish the unsafe property with the IHPC and was placed on the agenda by the IHPC at its meeting on November 3, 2010. At that meeting the Defendant requested a continuance until the December hearing, as provided in the IHPC's rules, and the IHPC granted the continuance. However, at the IHPC meeting on December 3, the Defendant chose not to be prepared to prosecute its petition, resulting in its dismissal by the IHPC. The Defendant availed itself of its one mandatory continuance under the IHPC's rules but still failed to prosecute its petition. The Defendant now complains about the IHPC's grant of the very permit it requested a second time. The Defendant's petition fails to state any harm that the Defendant suffered and only attempts to compound the delays that the Defendant manufactured by failing to prosecute its first petition for a COA to demolish. The Defendant's petition for certiorari is defective as a matter of law because IC 36-7-4-1003 and IC 36-7-1.1-10 only permits a "person aggrieved" or an "aggrieved person" to appeal. In no way has the Defendant been prejudiced by the IHPC's grant of its second application for a COA.

4) The Defendant's complaint for judicial review of the IHPC's approval of its application was not perfected and should be dismissed because the Defendant failed to serve notice of its appeal to all the parties, specifically the Woodruff Place Civic League, Inc., as required by law. Because the complaint is legally deficient on its face, it is not a valid "petition" as intended by the Legislature in IC 36-7-4-1005 and IC 36-7-11.1-10 and cannot require a delay in these proceedings or a stay of the Court's order to [HHC] to demolish the unsafe building.

5) When Judge McCarty declined jurisdiction and ordered the petition for certiorari transferred to this Court, the Defendant requested a change of judge, attempting to evade this Court and to delay these proceedings again.

6) In the face of the Defendant's continued and legally baseless efforts to frustrate and avoid the Court's orders, the Court reaffirms its order that Health and Hospital Corporation demolish the unsafe structure at 915-917 Woodruff Place East Drive forthwith to protect public Health and safety.

Order

The Court's prior orders for [HHC] to demolish the property are reaffirmed.

Appellant's App. pp. 81-90.

On June 29, 2011, the House was demolished. At a hearing on July 12, 2011, counsel for Dickson Street withdrew and Bohlsen did not appear as ordered. The trial court found Bohlsen in contempt of court, issued an arrest warrant for him, and set a contempt hearing for August 16, 2011. On August 16, 2011, Judge Certo conducted a hearing relating to whether Bohlsen had misrepresented to him on September 14, 2010, what Judge Keel had told Bohlsen on June 8, 2010. After taking Bohlsen's testimony, Judge Certo found that Bohlsen had given "unambiguously false" testimony that "could only have been intended to mislead the court[,]" found Bohlsen in direct contempt, and sentenced him to twenty-one days of incarceration. Appellant's App. p. 21.

On August 22, 2013, Bohlsen filed a motion for relief from judgment. On December 24, 2013, the trial court issued its order on Bohlsen's motion for relief from judgment, ruling that it had incorrectly found him guilty of direct contempt. The trial court concluded, however, that the procedural requirements for finding Bohlsen guilty of indirect contempt

13

had been satisfied and modified its ruling to reflect a finding of indirect contempt.

## DISCUSSION AND DECISION

The trial court ultimately found Bohlsen to be guilty of indirect contempt of court. In general, "[d]irect contempt involves actions occurring near the court, interfering with the business of the court, of which the judge has personal knowledge. Indirect contempt undermines the activities of the court but fails to satisfy one of the other direct contempt requirements." *Hopping v. State*, 637 N.E.2d 1294, 1296 (Ind. 1994). It is not in dispute that Bohlsen's false statements to the trial court would, at most, constitute indirect contempt of court. *See, e.g.*, *In re Marriage of Neiswinger*, 477 N.E.2d 257, 260 (Ind. 1985) ("We hold that giving false testimony in the manner done here, the falsity of which could not be known but only inferred by reference to later testimony and which, unlike, for example, a refusal to testify, apparently caused no disturbance or disruption or palpable offense to the proceedings does not warrant a summary conviction and, therefore, is not a direct contempt.").

Indiana Code chapter 34-47-3 governs indirect contempt proceedings.

(a) In all cases of indirect contempts, the person charged with indirect contempt is entitled:
    (1) before answering the charge; or
    (2) being punished for the contempt;
to be served with a rule of the court against which the contempt was alleged to have been committed.
(b) The rule to show cause must:
    (1) clearly and distinctly set forth the facts that are alleged to constitute the contempt;
    (2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and

(3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

(c) The court shall, on proper showing, extend the time provided under subsection (b)(3) to give the defendant a reasonable and just opportunity to be purged of the contempt.

(d) A rule provided for under subsection (b) may not issue until the facts alleged to constitute the contempt have been:

(1) brought to the knowledge of the court by an information; and

(2) duly verified by the oath of affirmation of some officers of the court or other responsible person.

Ind. Code § 34-47-3-5.

Indiana Code section 34-47-3-7 provides for the appointment of a special judge to hear and decide an allegation of indirect contempt under certain circumstances:

(a) Except as provided in subsection (b), this section applies to all cases of indirect contempt of courts of this state, other than the supreme court or the court of appeals.

(b) This section does not apply to indirect contempts growing out of willfully resisting, hindering, delaying, or disobeying any lawful process or order of court.

(c) The court against which the alleged contempt was committed shall, at the time the rule to show cause is issued, nominate three (3) competent and disinterested persons, each of whom shall be an available judge or member of the Indiana bar, to be submitted to the parties in the action, from which the state, by the prosecuting attorney, and the defendant shall immediately strike off one (1) name each.

(d) The court shall appoint the person who remains unchallenged under subsection (c) to preside in the cause as special judge.

(e) If the prosecuting attorney, the defendant, or the defendant's attorney refuse to strike off the names under subsection (c), then the clerk of the court shall strike for them.

(f) If the person appointed under subsection (d) is an attorney and not a regular judge, and if that person consents to serve, the person shall be qualified as other judges. The person's appointment and oath shall be filed with the clerk and entered on the order book of the court. The appointed person may hear and determine the cause until the cause is disposed of.

We now proceed to Bohlsen's specific contentions.

15

## I. Whether the Trial Court Erred in Denying
## Bohlsen's Motion for Relief from Judgment

Bohlsen contends that the trial court erred in denying his motion for relief from judgment because the trial court's underlying judgment of indirect contempt is void. Indiana Trial Rule 60(B)(6) provides that on a motion the court may relieve a party from a judgment if "the judgment is void[.]" The weight of Indiana authority regarding the standard of review of the denial of such a motion holds that

> a motion under T.R. Rule 60(B)(6) alleging the judgment is void requires no discretion on the part of the trial court because either the judgment is void or it is valid. *Schoffstall v. Failey* (1979), 180 Ind. App. 528, 389 N.E.2d 361, 363. Void judgments can be attacked, directly or collaterally, at any time. *International Alliance of Theatrical Stage Employees v. Sunshine Promotions, Inc.* (1990), Ind. App., 555 N.E.2d 1309, 1315.

*Santiago v. Kilmer*, 605 N.E.2d 237, 239 (Ind. Ct. App. 1992), *trans. denied*; *see also Farmers Mut. Ins. Co. v. M Jewell, LLC*, 992 N.E.2d 751, 754 (Ind. Ct. App. 2013), *trans. denied*; *Yoder v. Colonial Nat'l Mortg.*, 920 N.E.2d 798, 801 (Ind. Ct. App. 2010); *Laflamme v. Goodwin*, 911 N.E.2d 660, 664 (Ind. Ct. App. 2009); *LePore v. Norwest Bank Ind., N.A.*, 860 N.E.2d 632, 634 (Ind. Ct. App. 2007); *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 826 (Ind. Ct. App. 1999).

Bohlsen contends that the trial court's judgment of indirect contempt is void because the trial court did not appoint a special judge to hear and decide the matter. While we are skeptical that the trial court's judgment would indeed be "void" if it had been required to appoint a special judge and failed to do so, we need not address the matter in such depth. The Indiana Supreme Court has addressed the question and squarely held that the

16

appointment of a special judge is not required in indirect contempt proceedings in civil cases.

In the case of *Bangs v. Northern Indiana Power Co.*, 211 Ind. 628, 6 N.E.2d 563 (1937), the Indiana Supreme Court evaluated a claim that a special judge should have been appointed to conduct an indirect contempt proceeding, which was brought under a predecessor statute to Indiana Code section 34-47-3-7:

> The section further provides that from the names submitted by the court 'the state of Indiana, by the prosecuting attorney, and the defendant, shall immediately strike off one of such names each. * * * If the prosecuting attorney or the defendant, or his attorney, refuse to strike off the names, then the clerk of such court shall strike for them.' Evidently the Legislature had in mind criminal contempt cases in which the prosecuting attorney represented the state. When the 1931 act is read in connection with other statutes upon the subject of change of venue, and when it is considered that the facts here involved constitute civil contempt, it is plain that the statute relied upon by appellants does not apply, but applies only in the matter of the selection of judges and the right to change of venue in criminal contempt cases.

*Bangs v. N. Ind. Power Co.*, 211 Ind. at 633-34, 6 N.E.2d at 565 (asterisks in original).

As previously mentioned, Indiana Code section 34-47-3-7(c) provides that

> The court against which the alleged contempt was committed shall, at the time the rule to show cause is issued, nominate three (3) competent and disinterested persons, each of whom shall be an available judge or member of the Indiana bar, to be submitted to the parties in the action, *from which the state, by the prosecuting attorney*, and the defendant shall immediately strike off one (1) name each.

(Emphasis added).

We conclude, as did the *Bangs* court, that the requirement that the prosecuting attorney strike one of the special judge nominees makes it clear that the appointment of a special judge is only required in criminal cases, one of which this is not. The trial court did not err in denying Bohlsen's motion for relief from judgment on the basis that it erroneously

17

failed to appoint a special judge.

## II.  Whether the Trial Court Abused its Discretion in
## Denying Bohlsen's Motion for Relief from Judgment

Bohlsen contends that the trial court abused its discretion in denying his motion for relief from judgment. Our review of a trial court's grant or denial of a motion for relief from judgment pursuant to Trial Rule 60(B) is limited to determining whether the trial court committed an abuse of discretion. *Citimortgage, Inc. v. Barabas*, 950 N.E.2d 12, 15 (Ind. Ct. App. 2011). A trial court abuses its discretion when its ruling is clearly against the logic and effect of the facts and circumstances before the court. *TacCo Falcon Point, Inc. v. Atlantic Ltd. P'ship XII*, 937 N.E.2d 1212, 1218 (Ind. Ct. App. 2010). The burden is on the movant for relief from judgment to demonstrate that the relief is both necessary and just. *In re Paternity of M.W.*, 949 N.E.2d 839, 842 (Ind. Ct. App. 2011). Trial Rule 60(B) "affords relief in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant." *Goldsmith v. Jones*, 761 N.E.2d 471, 474 (Ind. Ct. App. 2002). Bohlsen contends that he is entitled to relief pursuant to Trial Rule 60(B)(8), which allows for relief for "any reason justifying relief from the operation of the judgment[.]" Bohlsen acknowledges that "[r]elief under this subsection is reserved for those cases where exceptional circumstances justify extraordinary relief." *Lake Cnty. Trust Co. v. Gainer Bank, N.A.*, 555 N.E.2d 1356, 1360 (Ind. Ct. App. 1990), *trans. denied*.

Bohlsen first argues that relief from the trial court's judgment of contempt is justified because the trial court issued an order on June 22, 2011, in which it found that he had provided false testimony, which was later the subject of the contempt hearing of August 16,

18

2011. Bohlsen seems to argue that all of this establishes that the trial court prejudged his guilt and that the contempt hearing was therefore a mere formality. Bohlsen contends that because the trial court had allegedly already made up its mind prior to the contempt hearing, the appointment of a special judge was necessary. We have already determined, however, that the appointment of a special judge to hear indirect contempt allegations is not required in civil cases, and Bohlsen does not explain how such an appointment might have helped him in any event.

Bohlsen also notes that the trial court issued neither a formal rule to show cause nor a contempt information pursuant to Indiana Code section 34-47-3-5.

> If no rule to show cause is issued in compliance with this statute, a court may lack the authority to hold a person in contempt. *See Carter v. Johnson*, 745 N.E.2d 237, 241 (Ind. Ct. App. 2001). Strict compliance with the rule to show cause statute may be excused if it is clear the alleged contemnor nevertheless had clear notice of the accusations against him or her, for example because he or she received a copy of an original contempt information that contained detailed factual allegations, or if he or she appears at the contempt hearing and admits to the factual basis for a contempt finding. *See Lasater v. Lasater*, 809 N.E.2d 380, 385-86 (Ind. Ct. App. 2004); *Mitchell v. Stevenson*, 677 N.E.2d 551, 560-61 (Ind. Ct. App. 1997), *trans. denied*.

*In re Paternity of J.T.I.*, 875 N.E.2d 447, 451 (Ind. Ct. App. 2007). The overriding principle to be served is that "due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses." *Ind. State Bd. of Educ. v. Brownsburg Cmt'y. Sch. Corp.*, 842 N.E.2d 885, 889 (Ind. Ct. App. 2006).

The trial court made the following findings relevant to the question of whether Bohlsen received the process that was due:

5.      This Court provided Mr. Bohlsen with his due process rights and

protections, as is indicated by the record:

a.   On May 17, 2011, the Court's Chronological Case Summary entry, reflecting the Court's order for the hearing that day, states:

…Defendant is ordered to show cause why it should not be found in contempt on 28 June at 10 am for failing to pay fines as ordered, allegations of wrecking on the property without a permit, obtaining a permit for structural repair in January 2011 from IHPC, and veracity of Mr. Bohlsen's in court statements on 14 Sept 2010 about Judge Keele's order on in court promise to abandon attempt to repair in lieu of being found in direct contempt of court on 17 September 2010. All members of Dickson Street Investments, LLC ordered to appear…

b.   On June 27, 2011, the Court "on its own motion reset [the] matter due to scheduling conflicts." The contempt hearing was rescheduled for July 12, 2011 at 9:00 a.m.

c.   On July 12, 2011, Mr. Kress, one of Mr. Bohlsen's numerous attorneys throughout this litigation, appeared and indicated that Mr. Bohlsen fired him the prior Friday (July 8, 2011). Mr. Bohlsen, however, did not appear, and the Court issued a warrant with a $15,000 cash bond. The Court reset the contempt hearing for August 16, 2011, at 9:00 a.m.

d.   On July 29, 2011, Andrew B. Arnett filed an Appearance on behalf of Mr. Bohlsen, a "non-party." Counsel also filed a Motion to Recall Bench Warrant, in which counsel asked the Court, among other requests, to vacate the contempt finding from July 12, 2011. As there had been no finding of contempt on July 12, 2011, the Motion was denied on August 3, 2011, with an entry that the matter would be heard "16 August on contempt for Mr. Bohlsen's prior in court statements."

e.   On August 15, 2011, "Defendant Tad Bohlsen, by counsel [Arnett]" sought a continuance of the contempt hearing scheduled for August 16, 2011. The basis for the motion was that "[c]ounsel … has just entered his appearance … needs more time to prepare for the contempt hearing."

f.   The Court's Order on August 15, 2011, as reflected in the ccs, and faxed to counsel a t 3:40 p.m. on August 15, 2011, states:

Court denies Mr. Bohlsen's Motion to Continue, as the date was confirmed for his convenience on August 3rd, and the request for continuance is not timely. The Court will extend courtesy to Mr. Arnett, as it has to more than a dozen attorneys who have entered appearances in this case on behalf of Mr. Bohlsen in various capacities, including providing transcripts concerning the contempt

allegations.

6. It is clear from the record that Bohlsen was aware, or should have been aware, of the purpose of the contempt hearing, as well as the specific allegation for which he was to answer. *Lesh v. Chandler*, 944 N.E.2d 942, 954 (Ind. Ct. App. 2011).

7. This Court also provided Bohlsen with an opportunity to present testimony and evidence to the Court as to why he should not be held in contempt.

8. At the previously-scheduled contempt hearing on August 16, 2011, Bohlsen appeared in person and by counsel, Mr. Arnett. As this case was an ongoing matter, the Court, over the Plaintiff's objections, heard only the contempt matters and not the other remaining allegations which were the subject of the case.

9. On August 16, 2011, Bohlsen was provided the opportunity to explain to the Court why he should not be held in contempt. At the conclusion of the hearing, the Court was not persuaded that Bohlsen's testimony sufficiently denied, explained, or excused the facts underlying the contempt proceeding. Because his personal conduct defied the Court's orders and attempted to deceive a judicial officer, the Court held Bohlsen in contempt a second time and ordered Bohlsen to serve a 21-day sentence of incarceration.

Appellant's Br. pp. 25-26 (footnotes omitted).

The trial court's findings on this question, none of which Bohlsen challenges, amply support a conclusion that Bohlsen had clear notice of the allegations against him and when he would be given the opportunity to defend himself. The CCS indicates that on May 17, 2011, the trial court ordered Bohlsen to show cause why he should not be held in contempt for, *inter alia*, his in-court statements "on 14 Sept 2010 about Judge Keele's order on in court promise to abandon attempt to repair[.]" Appellant's App. p. 18. The CCS entry indicates that the matter had been reset "to 16 Aug on contemptfor [sic] Mr. Bohlsen's prior in court statements[.]" Appellant's App. p. 20. Bohlsen does not claim ignorance of these entries, which clearly indicate the nature of the allegations against him and when they would be

heard. Moreover, Bohlsen does not deny that he was given the opportunity to present evidence at the hearing, which he did. Under the circumstances of this case, we conclude that the trial court's failure to issue a rule to show cause and a contempt information did not deny Bohlsen due process.

The judgment of the trial court is affirmed.

RILEY, J., and ROBB, J., concur.